## 10517

### LAWRENCE *ET AL.* v. CLARK *ET AL.*

(104 S. E. 380.)

1. DEEDS—LOVE AND AFFECTION AND PAYMENT OF $5 VALUABLE CONSIDERATION.—A deed from father to son, stating a consideration of love and affection and $5 paid to the father, was supported by valuable consideration.

2. REFORMATION OF INSTRUMENTS — HEIRS OF SON CANNOT COMPEL REFORMATION OF FATHER'S VOLUNTARY DEED TO SON TO CONVEY FEE.—Where a grantor made conveyance to his son purely as a matter of grace without consideration, he cannot be required to reform the terms of the gift at the instance of the heirs of the grantee to conform with the claimed intention of the parties to convey a fee.

3. REFORMATION OF INSTRUMENTS—REFORMED DEED SPEAKS AS OF DATE OF EXECUTION.—When a Court orders the reformation of a deed, the reformed deed necessarily speaks as of the date of original execution, subject to rights of subsequent creditors and purchasers for value.

4. REFORMATION OF INSTRUMENTS — SUCCESSSORS OF SON, GRANTEE OF FATHER, ENTITLED TO REFORMATION OF DEED TO PASS FEE.—Where a father, conveying to his son for a recited consideration of love and affection and $5, intended to convey a fee, but words of inheritance were omitted by the scrivener, and the son made his home on part of the land and sold the balance as his father intended, leaving the part on which he lived to his wife as a home, who in turn devised it, the heirs at law of the father are not entitled to partition such land as against the devisees of the son's widow, who are entitled to reformation of the deed.

Before SEASE, J., Spartanburg, March, 1919. Reversed.

Action by Enoch Lawrence *et al.* against E. C. Clark *et al.* for partition. From judgment for plaintiffs, the defendants appeal.

The following is the master's report on issues involving the Simeon Gowan home place:

On June 3, 1878, William Gowan conveyed to his son, Simeon Gowan, in consideration of love and affection and $5, a 12½-acre tract of land at Inman. The usual general warranty clause is incorporated in the deed, but words of inheritance are entirely wanting, in both the granting clause and the habendum. This deed is recorded in Book OO, at page 635, R. M. C. office for Spartanburg county.

By his last will and testament, which bears date February 12, 1900, and was admitted to probate August 27, 1900, and which will be found in Record Book 84, package 29, probate Court, Simeon Gowan attempts to dispose of a portion of the 12½-acre lot in the following manner: "Third. I give, devise and bequeath unto my beloved wife, Sarah Gowan, a two-acre lot of land, more or less, in the town of Inman, on which my dwelling house is situated and where I now live. Said land is bounded by Jas. H. Ballenger, Simeon Gowan and Jno. D. Humphrey and is known as my homestead, and

that my beloved wife, Sarah, shall have the said lot of land forever and dispose of said lot as she wants to do and desires to dispose of it."

Sarah Gowan's will bears date July 14, 1916, was probated August 8, 1916, and contains the following clause: "In consideration of services rendered me during my lifetime, I will, devise and bequeath all the rest and residue of my property, of whatsoever nature and wheresoever found, both real and personal, to E. C. Clark and his wife, Florence Clark."

This will is filed in Record Book 96, package 70, probate Court. E. C. Clark and Florence Clark are not related in any way to Sarah Gowan, nor to Simeon Gowan.

This suit was brought for the partition among the heirs of William Gowan of certain real estate which William Gowan had conveyed and devised to his son, Simeon Gowan, for life, and his daughter-in-law, Sarah Gowan, for life, after the death of both of them. The main issues of the case have already been adjudicated. This report concerns only the 2½-acre lot in the town of Inman, known as Simeon Gowan's home place. The rest of the 12½ acres was sold off to various purchasers by Simeon Gowan during his lifetime. Since that time these purchasers have made valuable improvements on the lots so purchased, and the principal business buildings in the town of Inman are situated upon the 10 acres, including the Bank of Inman, the Inman Hotel, the storehouse adjoining the bank, the R. G. Landrum property, the Baggott property, etc. Simeon Gowan retained the northeast corner of the 12½-acre boundary until his death, containing 2 or 2½ acres, and this is the property now in dispute.

Plaintiffs and defendants (except E. C. Clark and Florence Clark) claim that the property reverted to the estate of William Gowan upon the death of Simeon Gowan, and that it should now be partitioned amongst the heirs at law of William. The Clarks contend that the deed from Wil-

liam Gowan to Simeon Gowan was not intended to convey only a life estate, but that the grantor intended to convey to his son, Simeon, an estate in fee simple, and that by the mistake of the scrivener the words of inheritance were omitted, which words of inheritance, they allege, should be supplied by a Court of equity in order to make the instrument conform to the intention of the parties thereto. They therefore ask that the deed be reformed so as to include the magic word "heirs," which was omitted from the habendum clause of the deed by G. H. Camp, Esq., notary public, surveyor and neighborhood adviser in and about the town of Inman. The heirs of William Gowan, replying to the answer of the defendants, Clark, allege that the deed from William Gowan to Simeon Gowan should not be reformed in a Court of equity at the instance of E. C. Clark and wife, for lack of consideration; that they are volunteers, and that the deed was without consideration as to them.

The question of law involved herein has given me no little concern, more particularly because of the fact that there are practically no decisions in point by our own Court. Before proceeding to discuss the question as to whether or not a Court of equity will reform a deed, at the suit of those who are pure volunteers, where the consideration expressed is "love and affection and five dollars," I desire first to state my findings of fact, as follows:

It was the intention of William Gowan to convey the fee in the 12½-acre tract to his son, Simeon Gowan. Whether there was an agreement between father and son on this point, or whether the conveyance was executed by William Gowan without any consultation with his son, we have no way of knowing. Whether the $5 expressed as a part of the consideration in the deed was paid or not, we have no way of knowing—to my mind, it makes absolutely no difference. It seems to me that any grantor who acknowledges the receipt of a purely nominal consideration by his deed, thus attempting to support his conveyance, should be

estopped from denying the receipt of the consideration so expressed in his deed. It was clearly the intention of William, however, to give such an estate to Simeon as would enable him to sell and dispose of the property as he saw fit. So he called in Squire Camp and had the survey of the 12½ acres made by him, and signed the deed which is recorded in Book OO, at page 635, and Simeon went into possession of the land and proceeded to sell parts of it, from time to time, to prospective settlers in the town of Inman. After selling off all of the land contained within the 12½-acre boundary except the northeast corner, whereon he continued to live, he died about 10 years ago. His widow continued in possession of the property until her death, about 6 years later. It is clear that neither the defendant, E. C. Clark, nor his wife, Florence Clark, is in any way related either to Simeon Gowan or to his wife, Sarah Gowan.

It may be stated in the outset that the law is well settled in this State that, where two parties have had an understanding, agreement, or contract, and in the effort to reduce this understanding to writing a mutual mistake was made, by which mistake the intention of the parties with regard to the subject-matter was not carried into effect, a Court of equity will enforce a reformation of the instrument. It will not alter or change the contract or agreement between the parties, but will alter the written instrument so as to make it conform to the original contract which the parties agreed upon. And it is required that the evidence in such cases shall be very clear and convincing. 3 L. R. A. 190; 5 L. R. A. 159.

In proceeding to review all the authorities which I have been able to find upon the question of the reformation of voluntary deeds, I forbear to discuss section 588 of Pomeroy's Equity Jurisprudence, which concerns *meritorious,* or *imperfect considerations,* and which has been cited by several of the Courts in the cases to be mentioned, sometimes as

authority for the reformation of a deed, and sometimes for the refusal to reform.

The first case in our own reports is that of *Horry v. Horry,* 2 DeSaus. 115. William and Elizabeth Branford conveyed their property to two trustees, for the use of the grantors or the survivors of them during life, and in case their two children, Elizabeth and Ann, should be living at the death of the surviving parent, to them jointly, or to the survivor of them if either should die before the death of the surviving parent. One of the two daughters died prior to the death of the parents, and upon the death of the surviving parent the two children of the predeceased daughter, Elizabeth, brought suit against Ann, the surviving daughter, for partition, contending that they could not, by any equitable construction, be deprived of the share due to their mother had she been living. It was insisted by counsel for complainants that the intention of the grantors was to provide for both of their children, and that the two words "without issue" should be inserted by the Court, so as to carry their intention into effect. The Court of chancery had no hesitation in deciding that the entire estate belonged to the defendants (Ann and her husband), and that complainants had no interest therein, saying: "It is only necessary to read the clause of the deed to determine the question; and nothing but the ingenuity of counsel could have raised a doubt." They further say that it cannot be regarded as a marriage settlement, but is a *voluntary settlement* made by the parents some years after marriage of a small portion of the mother's estate.

In *Dennis v. Dennis,* 4 Rich. Eq. 307, the Court refused to reform a deed of gift of negroes, executed 30 years before the suit, saying: "The plaintiffs are mere volunteers, who seek to reform a deed after the lapse of 30 years, in the progress of which the donors, donees, and scrivener have all died," etc.

The Dennis case, however, is worth very little to the Court in the present inquiry, since the opinion in that case states that the suggestion of fraud is unsustained by proof, and that the allegation of mistake is. equally unsustained by the evidence.

In the case of *Brock v. O'Dell,* 44 S. C. 22, 21 S. E. 976, Stephen Clayton conveyed 400 acres to his son, Alfred T. Clayton, in consideration of love and affection, in 1854, by a deed which did not contain the words of inheritance necessary to pass the fee. Stephen Clayton died in 1879, and Alfred T. Clayton conveyed the property by fee simple deed to O'Dell in 1882, and died in 1884. The heirs of Stephen Clayton brought suit to recover the property from O'Dell and to obtain partition amongst themselves, and the case was heard in 1893. The defendant alleged that it was the intention of both Stephen and Alfred Clayton that the word "heirs" should be inserted in the deed of 1854, and that its omission was the mistake of the scrivener. The suit resulted in a verdict for the defendant, which ripened into a judgment, from which the heirs of Stephen Clayton appealed. The judgment of the Circuit Court was affirmed. Mr. Chief Justice McIver filed a dissenting opinion, which he based upon two princpal grounds, the first of which was that the deed sought to be reformed was a purely voluntary conveyance. But the opinion of the Court, delivered by Mr. Justice Pope, contains this statement: "So far as the effort of the appellant is concerned where they seek to inject the question as to this being a voluntary deed, and, therefore, not reformable, we have looked in vain in the 'case' to find any place where these appellants raised such a question before the Circuit Judge, and it is too late to ask that this question be considered by this Court." So the case of *Brock v. O'Dell* is not authority for the reformation of a voluntary deed, although a voluntary deed was actually reformed by the Court in that case, but the only direct expression of opinion as to the question of whether or not

such a deed could be reformed is to be found in the dissenting opinion of the Chief Justice.

It will readily be seen that not much assistance is afforded by the decisions of our own State. It does not seem that the precise question concerned in the present inquiry has ever been squarely before our own Court. I shall, therefore, examine a few of the decisions of other Courts, selecting a few upon each side of the question. And first of cases where reformation was allowed:

In the case of *Crawley v. Crafton,* 193 Mo. 421, 91 S. W. 1027, a man who was about to engage in an unfamiliar business venture conveyed his real estate to his wife; suit was afterwards brought to reform the deed so as to correct the description of the land intended to be conveyed. "Such a deed," said the Court, "had not a valuable, but it has a meritorious consideration, *as between them and their heirs* (italics mine), which brings it within the cognizance of a Court of equity, and there is no good reason why an admitted mistake in the description of the property therein conveyed should not be corrected." For other Missouri cases, see *Hutsell v. Crews,* 138 Mo. 1, 39 S. W. 449; *Mudd v. Dillon,* 166 Mo. 110, 65 S. W. 973. In the case of *Hutsell v. Crews,* 138 Mo. 1, 39 S. W. 449, cited in the Crawley case, it was held that a deed making provision for a minor child has a meritorious consideration, and that the description therein contained could be corrected in a Court of equity.

In *Lynn v. Lynn,* 135 Ill. 18, 25 N. E. 634, William Lynn, Sr., made his will in 1872, wherein he devised a certain tract to his son, George. In 1873, he attempted to convey this same tract to a trustee for the support of the grantor's imbecile daughter during her life, and after her death to be divided among certain others. The land was incorrectly described in the deed. No money was paid, of course, and the trustee went into possession. About 1890, the administratrix of George Lynn brought a proceeding to

sell the property for the payment of debts. The probate Court ordered the sale, which was affirmed by the appellate Court, but the Supreme Court of Illinois reversed the lower Courts, while admitting the correctness of the principle that an executory agreement will not be enforced in a Court of equity upon the application of a volunteer. After stating the facts surrounding the conveyance and the transfer of possession to the trustee, the opinion concludes: "Under such circumstances, we are constrained to hold that the transaction was an executed trust, and, although there was a chance mistake in the description of the premises contained in the deed, a Court of equity may, under the authorities, uphold and sustain the deed, although it was not based on a money consideration."

In *Baker v. Pyatt,* 108 Ind. 61, 9 N. E. 112, it is held that while a Court of equity will not intervene to reform a purely voluntary deed, yet if there is any valuable consideration, however so small, supplemented by love and affection, a mistake in the deed may be reformed. Here, also, the mistake was one of description, the grantor having furnished an erroneous description to the scrivener by mistake, so that the deed actually described land which the grantor did not even own. Reformation was accordingly directed. This case involved a deed where the consideration expressed was "love and affection and certain services" which had been rendered by the appellee to the grantor. This case cites as authority the case of *Mason v. Moulden,* 58 Ind. 1, where the consideration was love and affection and $1 and where reformation was allowed.

The contrary view is taken by the Supreme Court of Illinois, as announced in the case of *Henry v. Henry,* 215 Ill. 205, 74 N. E. 126. Emily Henry attempted to convey to her son, William Henry, a 30-acre tract and a 15-acre tract, in consideration of love and affection. The 30-acre tract was correctly described, but the scrivener failed to describe the 15-acre tract which was intended to be con-

veyed, inserting instead the description of a tract which the grantor did not own. The Court holds that the defendant-appellant (William Henry) was the owner of the 30-acre tract, reversing the trial Court on this question, but says that the deed was a voluntary conveyance, without any consideration other than the mother's love and affection, and her desire to do something for the grantee in recognition of his kind treatment of her. The opinion cites the case of *Strayer v. Dickerson,* 205 Ill. 257, 68 N. E. 767, in which authorities are examined at length, and which clearly fixes the law of Illinois, and concludes: "As to the question raised by the cross-bill in reference to the correction of the deed in so far as it misdescribes the 15 acres sought to be conveyed, we are of the opinion the Court properly refused to grant the relief prayed for. As was said in the beginning of this opinion, this is clearly a voluntary conveyance. In such a case a Court of equity will not decree the correction of a mistake in the deed."

In the comparatively recent case of *Willey v. Hodge,* 104 Wis. 81, 80 N. W. 75, 76 Am. St. Rep. 852, a Court of equity refused to reform a deed which a father made to his son, in consideration of love and affection, where the deed failed to describe the land which the father had intended to convey, as against the other children and heirs of the grantor, assigning reasons which might equally well apply to the case at bar: "It is suggested that as the deed in question is based upon what is called in the books 'meritorious consideration,' the right to a reformation ought to be upheld. All the cases I have been able to find in which such a consideration has been upheld as warranting the intervention of a Court of equity rest upon the fact of the defective execution of a power, or upon some matter of contract, such as an agreement for a family settlement, or the result of negotiation and agreement. These elements are entirely wanting in this case. The grantee in the deed knew nothing of its execution until after his father's death. The son

was an adult person, in no way dependent upon the bounty of the parent. He has no claim upon his father at all, superior to his sisters, against whom he seeks relief."

The same doctrine is upheld in the case of *Richardson v. Adams,* 171 Mass. 447, 50 N. E. 941. In that case, the grantor made a deed of trust to the children of one of his creditors, for the reason that he desired to pay an outlawed debt. He overlooked one of the creditor's heirs—a grandson, whose father was dead; he was the only heir excluded. Proof showed that the grantor did not know that this child was living. The Court refused to reform the trust, saying: "Whether he would have included the plaintiff among the beneficiaries if he had known that he was alive, and what his relation to Alfred Richardson was, can be only a matter of conjecture. The plaintiff had no legal claim upon him, and even if he had known about the plaintiff, it is possible that he still might have chosen to limit his bounty to the living children of Alfred Richardson, and their children and issue, as he has done."

A similar case is that of *Smith v. Smith,* 80 Ark. 458, 97 S. W. 439, 10 Ann. Cas. 522, where reformation of a voluntary conveyance to grantor's wife was refused. This was a suit defended by the widow against the grantor's children, after his death. The Court said that the deed was voluntary, in consideration of love and affection, and that no previous consultation or agreement was shown. See, also, *Enos v. Stewart,* 138 Cal. 112, 70 Pac. 1005; *Finch v. Green,* 225 Ill. 304, 80 N. E. 318.

The case of *Else v. Kennedy,* 67 Iowa, 376, 25 N. W. 290, lays down the same principle, but I do not consider it a very strong authority here, for the reason that a reading of the case convinces me that the circumstances under which the voluntary deed was obtained by the grantee and the methods employed to obtain it, did not commend themselves to the approbation of the Court, although the decision appears to be based by the Court upon the ground that the

deed was voluntary, and that the grantor was under no natural or moral obligation to make any greater provision for the grantee than for her other children. The Court refused to reform the description in the deed.

The case most nearly in point is that of *Powell v. Morisey*, 98 N. C. 426, 4 S. E. 185, 2 Am. St. Rep. 343, where a grandfather had conveyed to his grandson a tract of land, and where it appeared that, through the inadvertence of the draftsman, the word "heirs" had been omitted from the deed. Reformation of the deed was sought on the ground that it had been the grantor's intention to convey the fee to his grandson. The reformation of the deed was refused, on the ground that it was a voluntary deed. This case is cited by Mr. Chief Justice McIver in the dissenting opinion in *Brock v. O'Dell*, 44 S. C. 42, 21 S. E. 976. Let us keep in mind the fact that while this strong authority is cited in the dissenting opinion of our Court, the opinion of the majority did not consider the question involved in this authority, but seems to indicate that voluntary deeds are not reformable.

The case of *Byrd v. O'Neal*, 106 S. C. 346, 91 S. E. 293, cited by counsel for the Clarks, is not authority for the reformation of a voluntary deed. There the statement is made: "O'Neal bought a tract of land near him and sold a part to his son-in-law, Byrd." This would indicate that full value was paid.

After studying the testimony, and giving consideration to such authorities as I have been able to find upon making diligent search, I am convinced that the weight of authority is in favor of a continued adherence to the old equitable doctrine that a deed will not be reformed at the instance of a pure volunteer. I feel impelled to hold, therefore, that the relief sought for by the defendants, E. C. Clark and wife, must be denied, and that the Court should, therefore, direct the sale of the 2½-acre lot of land in question for

partition and division among those who are now the heirs at law of William Gowan.

There are other reasons why the relief must be denied in the present instance; there is no proof that there was any antecedent agreement of consultation between William Gowan and his son, Simeon, and the element of mutuality is, therefore, entirely wanting, so far as the evidence discloses the facts. I cannot criticize the evidence as being lacking in clearness, nor do I entertain any doubt as to its truth; it is remarkably clear, vivid, and impressive, as far as it goes; but it does not supply all the elements of proof that are necessary to make out a case where reformation could be granted, under the rule of law that is applicable.

I, therefore, recommend that the lot of land in question, which is described in item 3 of Simeon Gowan's will (page 1 of this report), and which is the northeast portion of the 12½-acre tract described in the deed from William Gowan to Simeon Gowan, be ordered to be sold by the master, after due advertisement according to law and the custom of this Court, for partition and division among the heirs at law of Simeon Gowan, and that the proceeds of such sale, after the payment of costs, disbursements, and taxes, be distributed among the said heirs at law, according to their respective interests, as set forth in the master's report herein, of date January 27, 1917.

*Messrs. H. B. Carlisle* and *C. E. Daniel,* for .appellants, cite: *Deed was not voluntary:* 34 Cyc. 929. *Slightest value will give rise to consideration:* 23 R. C. L. 345; 10 Ann. Cas. 523. *Effort of Courts of equity should be to effectuate intention of parties:* 23 R. C. L. 326.

*Messrs. Carson & Tinsley,* for respondents.

October 12, 1920.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

The cardinal facts of this case are really not in dispute. William Gowan conveyed to his son, Simeon Gowan, a tract of land containing 12½ acres. The words of inheritance are to be found only in the warranty clause. Simeon made his will, giving a part of this land to his wife. The wife, in turn, devised the land to the appellants. After the death of Simeon and his wife, the plaintiffs, as heirs at law of William, brought this action for partition, against the appellants. The defendants alleged that William intended to convey a fee to Simeon, and that it was the mistake of the scrivener that omitted the words of inheritance, and asked for a reformation of the deed. The plaintiffs object to the reformation, on the ground that the conveyance to Simeon was a voluntary conveyance and cannot be reformed. The deed was written by G. H. Camp. Mr. Camp testified that William came to him and asked him to draw a deed to Simeon, his son, so that Simeon could sell it and get the money for it; that the omission of the words of inheritance was purely an act of inadvertence on his part. The master found that William intended to convey a fee, but, inasmuch as the conveyance was a voluntary conveyance, there is no power in the Court of equity to reform it, and, therefore, found against the appellants. This finding was affirmed by the Circuit Judge, who heard the case. From this finding this appeal is taken. The consideration as stated in the deed is:

"The consideration of the above lots of land is love and affection I bear my son, the said Simeon Gowan, and five dollars to me paid, the receipt whereof is hereby acknowledged."

In *Holder v. Melvin,* 106 S. C., at page 252, 91 S. E., at page 99, this Court, quoting from *Fuller v. Missroon,* 35 S. C. 314, 14 S. E. 714, says:

"The use of $5 paid by trustee to grantor is in support of this view. While it is true, the only evidence of this payment is in the recital of the deed itself, yet the only person

who could gainsay it would be a creditor of the grantor; it would certainly bind his heirs so as to prevent a reverter. A very slight circumstance in the way of consideration, even if it be 'a peppercorn,' our own Courts declare, will be sufficient evidence of intention to carry the whole estate."

There was a valuable consideration in this deed, and the appellants are not volunteers.

The Court might stop here, but it is always better to show that the result of an equity case is sustained by equitable principles and not rest it upon a presumption of law, particularly when we all know that the presumption is probably not borne out by the facts of the case. In this case, in all probability, the $5 was not paid. We know that there are decisions in other jurisdictions that hold that a voluntary deed cannot be reformed at the demand of the grantee over the objection of the grantor, and that the right of the grantor extends to his heirs at law. The authorities are not binding, and we will not follow them, because the reason of the rule does not extend to the heirs at law. The agreement, being without consideration, could not be enforced against the grantor. It was purely a matter of grace on his part. The grantee paid nothing, and it came with bad grace from him to attempt to force a mere courtesy. The grantor was under no obligation to give what is contained in his deed, and he cannot be required to alter the terms of the gift. The heir at law has given nothing. It never was his. The grantee does not even owe him thanks. When a Court orders the reformation of a deed, the reformed deed necessarily speaks as of the date of its original execution. Equity says that the reformed deed is to be considered as the true deed, subject, of course, to the rights of subsequent creditors and purchasers for value, who may have been misled to their injury. When that is done, the heir at law has nothing to relinquish, and never had. No injustice is done to the heir at law. The record shows absolutely no loss to, or equity in, the plaintiffs. The

record shows that his father intended to convey a fee, and that by the mere inadvertence of the scrivener the word "heirs" was omitted; that Simeon made his home on a small part of that, and sold the balance as his father intended he should do; that Simeon by will left that portion to his wife as a home, and his wife, in turn, left it to those who had been kind to her and morally were entitled to it. Against this the plaintiffs assert a purely technical legal right, and ask this Court to ignore all legal and equitable rights of Simeon and those who claim under him. This demand is refused, and the judgment appealed from is reversed.

MESSRS. CHIEF JUSTICE GARY and JUSTICE HYDRICK concur.

MR. JUSTICE WATTS. For the reasons assigned by Master Lanham, confirmed by the Circuit Judge, I think the judgment should be affirmed.

MR. JUSTICE GAGE. In my opinion if a voluntary grantee may not have reformation, neither may his privy in estate. But in my opinion the circumstances of the instant case entitled the grantee to have reformation of the deed.

I, therefore, vote for reversal.