### LYNCH *ET AL.* v. JORDAN *ET AL.*

#### (143 S. E., 264)

DEEDS—DEED TO GRANTOR'S SON, OR TO DAUGHTERS, IF SON DIED BEFORE REACHING 21, GAVE SON LIFE ESTATE, NOT FEE CONDITIONAL.— Deed conveying land to grantor's son, with reservation of life interest, or half interest to grantor's daughters, if son died before reaching 21, gave son a life estate, not a fee conditional.

Before SHIPP, J., Florence, October, 1926. Affirmed.

Action by James C. Lynch and others against G. H. Jordan and others. From a judgment of dismissal, plaintiffs appeal.

The complaint, answers, Master's report, decree of Circuit Judge Shipp, and appellants' exceptions thereto, were as follows:

#### COMPLAINT

I. That one, R. J. Jordan, on February 4, 1889, late of the County of Florence and State of South Carolina, in consideration of natural love and affection, the sum of $5 and other good and valuable consideration, executed and delivered to the defendant, his son, G. H. Jordan, his deed of conveyance whereby he conveyed to said defendant "the

following described tract of land situate in the County and State aforesaid, bounded and described as follows: Containing 220 acres, be the same a little more or less and known as the 'homestead' and bounded as follows: On the north by lands of J. C. Lynch and Isham Hinson; on the south by lands of J. C. Lynch and estate of Daniels; on the east by N. E. R. R. of South Carolina and on the west by lands of F. L. Miles and estate of Daniels."

II. This paragraph sets out that J. C. Lynch acquired this property from G. H. Jordan by various deeds of the separate portions thereof, which deeds are dated as follows: November 28, 1898; October 10, 1900; January 12, 1904; February 21 1907, and March 10, 1911.

III. That on the 4th day of February, 1889, the said R. J. Jordan executed to his son, the defendant, G. H. Jordan, the deed alleged in paragraph I of this complaint, intending thereby to convey to the said defendant the premises therein described in fee simple. That by mistake of the scrivener who drew the said deed, and by the mutual mistake of the said grantor and the defendant G. H. Jordan, the word "heirs" was omitted in the habendum clause of the said deed, and that with the mutual mistake the parties to said deed by reason of said error in such omission the said deed was delivered and accepted; the said parties supposing that the tenure was properly stated therein, even though they were ignorant of legal impression and not acquainted with the import of such omission.

IV. That, at the time of the execution of said deed, the grantee, G. H. Jordan, was a youth who was in bad health and physically weak, for which reason there appears a modification in the habendum clause, as follows: "To have and to hold the above granted premises unto the said G. H. Jordan, but reserving my life interest in the above described premises, but in case the said G. H. Jordan decease before he arrives at the age of twenty-one years then upon my daughters, Cassey Crawford, Minnie Matthews and Susannah Jor-

dan, one-half interest in the above described tract of land, in value not to exceed one hundred and fifteen ($115.00) dollars per share."

V. That it was the full intention of the grantor to vest his said son with a fee-simple title in and to the said property upon his arriving at the age of 21 years, and that, pursuant to the provisions of said deed after the death of the grantor, his father, and after arriving at the age of 21 years, he went into possession of the said land and has held the same adversely till the present time, except those portions thereof which he conveyed to the plaintiff J. C. Lynch, who is bringing this proceeding to remove the apparent cloud upon the title of the same as hereinbefore stated, by invoking the aid of this honorable Court for a decree directing the reformation of the deed executed by R. J. Jordan to G. H. Jordan by declaring said deed to have conveyed a fee-simple title.

VI. That the said R. J. Jordan had conveyed by deed to his other children other lands as their portions of his property in fee-simple, and that it was his full intention to accord the same rights to his son, who was at that time in declining health, should he live to the age of 21 years.

VII. That the defendants set forth in the statement of this cause of action are the only heirs at law of R. J. Jordan; all of whom being adults over the age of 21 years except the defendants Charlie Pate, Bertie Pate, who are infants under the age of 14 years and who reside with the defendant Manton Pate. and Maybelle Matthews, Annie Matthews, and Johnnie Matthews, who are over the age of 14 years.

### ANSWER OF DEFENDANT G. H. JORDAN

Admits the truth of the allegations of the complaint, and joins in the prayer thereof.

Further answering:

I. The defendant alleges that his father, R. J. Jordan, who executed to him the deed mentioned in the complaint, repeatedly talked with this defendant regarding the division

of his lands among his children, and that he always led him to believe, before and after execution of said deed, that he was giving him a good title for the property in question, provided that he reach the age of 21 years, but, if he died before that time, he provided for those mentioned in the deed.

II. That this defendant is now over 50 years of age. That many years after he reached the age of 21 he conveyed the premises to the plaintiff, giving him deeds in fee-simple with general warranty, knowing that he had met the conditions mentioned in the deed from his father, and relying upon what his father had told him, that he would have the only title to the property upon his reaching the age of 21 years.

### ANSWER OF INFANT DEFENDANTS

I. That these defendants claim such interest in the premises as to which they may be entitled, either at law or in equity, and submit their rights and interests therein to this honorable Court for protection.

### ANSWER OF OTHER ANSWERING DEFENDANTS

II. That these defendants, upon information and belief, allege that the understanding and agreement and intention of the said R. J. Jordan, deceased, was not to convey unto the defendant G. H. Jordan the fee-simple title and estate in and to said premises, but, on the contrary, the agreement, understanding, and intention, was that the said G. H. Jordan should have an estate for life therein, which at that time it was anticipated and·expected would be of short duration, and at his death (that is, the said G. H. Jordan) that the said premises should vest in fee in the daughters of the said R. J. Jordan, namely, Cassie Crawford, Minnie Matthews, and Susannah Jordan, and that, if the deed failed to express this intention, that the same should be reformed to express the same and limit the estate of G. H. Jordan to one for life and at his death to vest the same in fee-simple in the right

heirs at law and distributees of the daughters, Cassie Crawford, Minnie Matthews, and Susannah Jordan.

Further answering, these defendants deny the truth of each and every allegation in said complaint contained inconsistent with the allegations of this answer hereinbefore set out.

Further answering, these defendants allege that, in so far as the defendant J. C. Lynch is concerned, he acquired whatever interest he has in the premises described in the complaint in this action, with full, constructive, and actual notice on the terms conditions, and defects, if any, in the deed set up in the complaint, as the basis of this action as far back as the 28th day of November, 1898, and at subsequent times thereafter until as late as the 10th day of March, 1911, and notwithstanding the aforesaid actual and constructive notice of the said J. C. Lynch in and about the premises he has delayed and neglected the commencement of his action until the latter part of the year 1922, during which undue delay and lapse of time many of the parties who had actual knowledge of the facts and of the intention and agreement of the parties to the said deed have died, and it has become extremely difficult to obtain direct evidence upon the point, and all of which operates to the material prejudice of these defendants, by reason whereof they allege that the said plaintiff J. C. Lynch and his grantees are barred by the laches in the premises.

### REPORT OF H. A. BRUNSON, MASTER

Pursuant to an order of reference in the case stated above, I held a hearing, which was attended by J. P. McNeill, E. S. Oliver, Esq., counsel for plaintiffs and P. H. Arrowsmith, Esq., counsel for certain answering defendants. The testimony, together with documents introduced in evidence, is herewith submitted to the Court.

This is a proceeding brought by plaintiffs against the heirs at law of R. J. Jordan, deceased, to reform a deed of con-

veyance made by said R. J. Jordan to his son, G. H. Jordan. Due service of the summons and complaint was made. On petition filed, a guardian *ad litem* was appointed for the infant defendants, and motion was made and granted to bring in as parties plaintiff the grantees of plaintiff J. C. Lynch, so that all parties having an interest in the premises involved herein are before the Court.

After hearing able arguments, and after very careful and somewhat prolonged consideration, I am presenting this report:

It may conduce to a better understanding of the situation to state the facts out of which this litigation arises. It seems that prior to February 4, 1889, R. J. Jordan had been the owner of a large body of land within and near the town of Coward, formerly Williamsburg, now Florence County. R. J. Jordan had five sons, Calvin, John, Met, Furman, and defendant G. H. Jordan; and besides, there were three daughters, Cassie, who married Crawford, Minnie, who married Matthews, and Susannah, who married McAllister.

The deed under consideration bears date February 4, 1889. At that time the grantor, R. J. Jordan, was approximately 60 years of age. For some reason, possibly to escape the consequence of surety, or possibly in contemplation of death, or perhaps both, he was disposing of his lands. He had conveyed a tract of between 55 and 60 acres to each of his four older sons, and there remained the home place, containing approximately 220 acres. At the time, G. H. Jordan, the youngest son, was a boy of 16 or 17 years of age. His health was delicate, and he was under the care of a physician, though it does not appear that he was actually bedridden.

The granting clause in the deed to G. H. Jordan conveying to him the 220 acres in issue reads as follows: "Know all men by these presents that I, R. J. Jordan, of the County and State aforesaid under consideration of five ($5.00) dollars to me paid by G. H. Jordan of the County and State aforesaid, and the natural love and affection, and other good

and valuable consideration, do hereby grant, bargain, sell and convey unto my son G. H. Jordan, the following described tract or parcel of land situate in the County and State aforesaid, bounded and described as follows :" Then follows the description.

The habendum reads as follows: "To have and to hold above granted premises unto the said G. H. Jordan, but reserving my life interest in the above described premises, but in case the said G. H. Jordan, decease before he arrives at the age of 21 years then unto my daughters, Cassie Crawford, Minnie Matthews and Susannah Jordan one-half (½) interest in the above described tract of land in value not to exceed one hundred fifteen ($115.00) dollars per share." There is no warranty.

R. J. Jordan, the grantor, died a few months after the execution of the deed, and his life interest died with him. G. H. Jordan, his grantee, continued in possession of the property. In 1898, after he had reached his twenty-first year of age, he conveyed a portion of the land to plaintiff J. C. Lynch. Subsequent to 1898, said G. H. Jordan executed to J. C. Lynch four other deeds, one in 1902, one in 1904, one in 1907, and one in 1911, and by all of these deeds conveyed to said J. C. Lynch the entire property. Said J. C. Lynch sold parts of the land, and he and his grantees in 1923 brought this suit. It appears, or that is my impression from the testimony, that said J. C. Lynch was negotiating a sale of a portion of this property to the Tobacco Association at Coward, that an examination of the title was made, and that, as a result of this examination, the association did not take the property. Thereupon this proceeding was brought to reform the deed so as to vest fee-simple title to the land in said G. H. Jordan.

Counsel for plaintiffs contends that R. J. Jordan, the grantor, intended to convey a fee-simple estate to G. H. Jordan, subject only to the contingency of his death before reaching the age of 21 years. Counsel for defendants con-

tends that he intended to convey a life estate to said G. H. Jordan. It is evident that the apt words of inheritance do not appear in the deed, so the task is here to ascertain the real intention of the grantor from the instrument itself and the testimony. The testimony does not give much light, so we must have recourse to the deed.

Right here, however, I should state that plaintiff, J. C. Lynch, made no examination of the records and that at least 10 years before this action was brought he had heard that there had been discussion in the neighborhood about the condition of this title. Because of that situation, defendants' counsel takes the position that said J. C. Lynch is not an innocent purchaser without notice, because the deed in question was recorded early in 1890; and he takes the further position that said J. C. Lynch is barred by his laches, in that he did not seek the Court's protection until 1923.

Admitting that said J. C. Lynch did not examine the records and that he did not take action, it must be borne in mind that the heirs of said R. J. Jordan also knew the title was under discussion, and, having this knowledge, they permitted G. H. Jordan to convey all the land away. They remained silent, and for that reason they would be as guilty of laches as plaintiff J. C. Lynch. Therefore, as in this regard plaintiff J. C. Lynch and the defendants are in the same situation, I shall not regard the question of laches at all.

The issue hinges upon the real intention of said R. J. Jordan when he conveyed the tract of land in issue to his son G. H. Jordan. Did he intend his son to have the fee or a life estate? Was the word "heirs" intentionally left out of the habendum clause, or was it an inadvertence; that is to say, the fault of the scrivener? The scrivener was not a lawyer, but a notary public living in the neighborhood.

It will be observed that the granting clause was the usual one; that is, it contains no limitation. There is no warranty, but the warranty clause has no effect upon the estate granted.

It is a measure of protection, but its entire absence here means that we can get no help from it.

The object of all construction is to get at the intention of the grantor, and it is a well-settled rule that all deeds are construed most strongly against him. It is observed that R. J. Jordan made no disposition of one half interest in the property should his son die before reaching the age of 21 years, and to this half interest he attaches no limitations or conditions of any kind whatsoever. I cannot conceive that he intended a reversion, for the reason that he had already conveyed lands to his other sons. At all events, it would bar these sons on the theory that they had received what their father intended they should have of his estate. Further, these sons or their heirs set up no claim to any part of the property; in fact, they are in default, and this clearly appears to be evidence of satisfaction of what had been done for them. It is noteworthy, too, that the scrivener used very apt terms in reserving a life estate to the grantor. So, had the grantor so intended and had so instructed him, he could so easily have entered the two words, "for life" in the habendum right after the name, "G. H. Jordan." I must conclude, therefore, that the grantor intended no reversion in at least one-half interest in the property, and that said G. H. Jordan took fee-simple title to the same. As to the remaining one-half, we have a different situation. The deed provides that, should G. H. Jordan die before the age of 21 years, one-half interest should go to three daughters. G. H. Jordan did not die before reaching his majority, and he is living today. Two theories may be advanced here:

First. That G. H. Jordan took a conditional fee, which in this instance means that the vesting of title in him was conditioned on his reaching the age of 21. He did reach the age of 21, and thereby the condition was removed. The removal of the condition vested fee-simple title in him.

Second. That G. H. Jordan took a life interest, with remainder to the three daughters named. If under this theory

we assume that, because of the absence of words of inheritance said G. H. Jordan took only a life interest, then for the same reason the three daughters took only a life interest, for here, too, the apt words of inheritance do not appear. This would throw the property back to the heirs general of R. J. Jordan, and I have no idea that he intended any such thing. Manifestly, then, this is an impossible construction because the grantor only reserved a life estate to himself and made absolutely no reservation of the reversion. Then, too, it seems absurd to believe that the grantor intended to base a life estate for his daughters on a life estate for his son, because they were older than he.

I am constrained to believe that the first theory suggested is the only tenable one, and that it expresses the grantor's real intention.

In summoning up, I must conclude that the said R. J. Jordan intended to create a fee in said G. H. Jordan. An ignorant man would not create a life estate by simply omitting words of inheritance. The language of the deed shows that the only event to terminate the grantee's estate would be his death before reaching the age of 21 and not his death after that time. Then, too, as already indicated, the instrument is not in fee to the remaindermen in case the grantee should die before reaching the age of 21. It seems to me that grantor's true intention was to give G. H. Jordan a fee-simple title if he lived more than 21 years, and, in the event that he did not live more than 21 years, to pass the remainder to his daughters in fee.

I therefore recommend that the deed be reformed so as to vest fee-simple title to the property herein involved in said G. H. Jordan.

## DECREE

This matter comes before me upon exceptions to the Master's report. The proceeding was brought to reform a deed. I have given the matter painstaking study and con-

sideration in the hope that I could sustain the Master in his conclusions. I agree with him that the evidence outside of the deed gives little light on the question involved. Much of the testimony is incompetent under Section 708, Vol. 1, Code of Civil Procedure. The Master bases his conclusion upon the construction of the deed. I cannot agree with him in his construction of the deed. I think the deed clearly gives to G. H. Jordan a life estate and not a fee conditional, and the evidence does not warrant the conclusion that it was the intention of the grantor to part with the fee. This action was brought after the death of the draftsman of the deed and after the death of the only disinterested witness to the deed, yet the Court is deprived of the benefit of two important witnesses, who might have shed light upon a matter which is now at least uncertain, and I cannot think that the plaintiff is entitled to the relief sought in this action. The findings of the Master are reversed, and the complaint is dimissed at plaintiff's cost, and it is so ordered.

## EXCEPTIONS

His Honor erred, it is respectfully submitted, in reversing the report of the Master made in this case and dismissing the complaint on the following grounds, to wit:

(1) In holding, in view of the language of the deed itself and the testimony as to the situation of the parties and the circumstances surrounding them at the time of the execution and delivery thereof, that the deed clearly gives to G. H. Jordan a life estate, and in not holding on the contrary that the surrounding circumstances, the situation of the parties at the date of the execution and delivery of the deed, and the language of the deed itself, considered in view of such situation and surrounding circumstances, indicate clearly that the grantor intended to convey a fee-simple title to the grantee, and that this intention was not made effective solely by reason of the mistake or misunderstanding of the grantor and the draftsman who prepared the deed.

(2) In holding that the deed clearly gives to G. H. Jordan a life estate, and that the evidence does not warrant the conclusion that it was the intention of the grantor to part with the fee, whereas he should have held that the face of the deed itself, when considered in the light of the purpose which the grantor evidently had, as disclosed in the testimony, to distribute his entire estate among his children, indicates a clear intention on his part to convey that particular tract of land in fee-simple to his son G. H. Jordan, subject only to the condition that he should live to be 21 years of age and to the reservation of a life estate to himself.

(3) In holding and ruling in effect that plaintiffs are chargeable with laches in not bringing the action at an earlier date with a view of procuring the reformation of the deed in question for the assigned reason that this action was brought after the death of the draftsman of the deed and after the death of the only disinterested witness to the deed, whereas he should have held that all the evidence shows that the grantor, R. J. Jordan, died within a few months after the execution of the deed in question; that the witness in question died previous to the purchase by plaintiff J. C. Lynch of a part of the land in question, and that there is no evidence whatsoever that the plaintiff J. C. Lynch, at any time until same date immediately preceding the commencement of this action, ever knew that there was a defect in the title, and should have held further that there was no higher duty upon plaintiff to discover the defect and bring action to remedy it than that which rested upon defendants.

(4) In not holding and ruling, in view of the position taken by the defendants to the effect that the three daughters of R. J. Jordan acquired the fee-simple title to this property subject to the life estate of G. H. Jordan, that, if G. H. Jordan acquired only a life estate, the three daughters acquired also only life estates therein.

*Messrs. McNeill & Oliver,* for appellants, cite: *Construction of deed:* 13 Cyc., 604, 609; 28 A. S. R., 723; 2 Strob., 156; 2 Mill, 98; 13 Rich. Eq., 42; 5 Rich., 189. *Reformation:* 115 S. C., 67; 108 Ind., 61; 58 Ind., 1; 115 S. C., 452; 21 S. C., 223; 100 S. C., 157; 94 S. C., 345; 5 Pom. Eq. Jur., 59; 102 A. S. R., 966; 85 S. C., 472; 15 S. C., 10; 21 C. J., 928.

*Messrs. Willcox & Hardee,* also for appellants, cite: *Deed itself and surrounding circumstances considered in arriving at contract between parties:* 112 S. C., 320. *Deed based on valuable consideration may be reformed:* 115 S. C., 67. *Reformation:* 117 S. C., 461; 94 S. C., 357; 92 S. C., 308. *"Laches":* 106 S. C., 346; 10 R. C. L., 396, 397, 405; 7 Am. Dec., 559. *Valuable consideration:* 115 S. C., 67. *Estoppel:* 128 N. W., 873; Ann. Cas., 1912-B, 92; 26 Fed., 891; 34 A. S. R., 868; 11 N. W., 201; Am. Dec., 490; 1 Bay, 241; 31 S. C., 155; 95 S. C., 339; 89 S. C., 394; 93 S. C., 405.

Mr. P. H. Arrowsmith, for respondents.

May 16, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action by the plaintiffs against the defendants is a suit in equity to have a deed construed and reformed, and was commenced in the Court of Common Pleas for Florence County by service of summons and complaint September, 1923.

The facts of the case are fully stated in the report of the Master, which will be incorporated in the report of the case.

The decree of his Honor, Judge Shipp, is satisfactory to this Court, and, for the reasons assigned by him, it is the judgment of this Court that the judgment of the Circuit Court be, and is hereby, affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES COTHRAN, BLEASE, and STABLER concur.

MR. JUSTICE COTHRAN: I concur in the opinion of Mr. Justice Carter for affirmance of the decree of his Honor, Judge Shipp, and wish to add certain observations.

In the first place, I think that the deed from R. J. Jordan to G. H. Jordan was a voluntary deed, which equity will not reform. *Brock v. O'Dell*, 44 S. C., 22, 21 S. E., 976. *Allgood v. Allgood*, 134 S. C., 233; 132 S. E., 48. *Jumper v. Lumber Co.*, 115 S. C., 452; 106 S. E., 473; and authorities cited by Chief Justice McIver in his dissenting opinion in *Brock v. O'Dell*. The reason for the rule is thus expressed by the great Chief Justice:

"For as I understand it the theory upon which a Court of equity proceeds in affording relief from a mistake is that there was a precedent agreement, the terms of which are imperfectly or inaccurately incorporated in the written instrument sought to be reformed; and equity, looking behind such written instrument, will require the specific performance of such precedent agreement by reforming the written instrument in accordance with the terms of such agreement. In other words, a Court of equity in both cases proceeds upon the same principle; and the rule is undoubtedly well settled that a Court of equity will not decree the specific performance of a purely voluntary agreement, even though under seal"—citing authorities.

See, also, *Horry v. Horry*, 2 Desuas., 115. *Dennis v. Dennis*, 4 Rich. Eq., 307.

In this connection I wish to express my disapproval of the principle apparently announced in the opinion of Mr. Justice Fraser in the case of *Lawrence v. Clark*, 115 S. C., 67; 104 S. E., 330, that, while the grantor may resist the reformation of a voluntary deed, the heirs of the grantor cannot. I think that the right of the grantor extends with equal force to his heirs.

But assuming that the deed was upon a valuable consideration, I think that the appellants have failed to establish their contention that R. J. Jordan intended to convey a fee to G.

H. Jordan. That intention must be gathered from the whole instrument. If the deed should be reformed by adding the words "and his heirs" after the name of the grantee in the habendum clause, the remainder of that clause, inconsistent with the fee, would, under the case of *Glenn v. Jamison,* 48 S. C., 316; 26 S. E., 677, be rendered nugatory. The grantor's intention to do a certain thing can hardly be established by destroying his express intention to do something else.

The grantor's intention should also clearly appear to dispose of the entire estate. The provision for his daughters, in the event of the death of G. H. Jordan before reaching full age, was not an interest in the land, but in the proceeds of it, not exceeding a named sum. This necessarily indicated a reversion to the grantor's heirs after the life estate to the son, and, besides, there was no disposition of the other half interest in the land.