SPENCER v. SPENCER.

[75 South. 770, Division B.]

1. REFORMATION OF INSTRUMENTS. *Voluntary conveyances.*

The general rule that voluntary conveyances being without consideration gives the grantee no right to reform without the consent of all parties, applies only in cases between the donor and donee.

2. SAME.

This rule does not apply to conveyances in execution of a family settlement.

3. SAME.

Complainant, a voluntary grantee of his deceased mother, had the right to have the deed reformed as against his brother, also a voluntary grantee from his mother, where it clearly appears that through mistake the deed failed to carry out the intention of the donor.

APPEAL from the chancery court of Washington county. HON. E. N. THOMAS, Chancellor.

Bill by T. H. Spencer against S. M. Spencer. From an order overruling a demurrer to the bill of complaint, defendant appeals.

The facts are fully stated in the opinion of the court.

*Campbell & Cashin,* for appellant.

It plainly appearing from the original bill that appellee is a voluntary grantee, will a court of equity lend its aid in his favor to reform a conveyance, especially where his pleadings show that he does not, at this late date, know the contents of the deed, and whether he ought to have eighty-three acres or one hundred acres more land? We think not.

"In order to warrant the reformation of a deed or mortgage, it must be founded upon a consideration, or

all of the parties must consent to the reformation. 24 Am. & Eng. Ency. of Law, 653; *German Mutual Ins. Co.* v. *Grim,* 2 Am. Rep. 34; *Willey* v. *Hodge,* 76 Am. St. Rep. 852.

In *Dawson* v. *Dawson,* 18 Am. Dec. 513, it is said: "The old beaten ground long since occupied by the courts of equity not to aid voluntary conveyances seems to render any reason that might be urged to show that the bill should be dismissed both trite and unnecessary." See note to *Williams* v. *Hamilton,* 65 Am. St. Rep. 475; *Jones* v. *Jones,* 88 Miss. 784; *Willey* v. *Hodge, supra; Enos* v. *Stewart,* 70 Pac. 1105; *Henry* v. *Henry,* 74 N. E. 126, and 17 Dec. Dig. Title, "Reformation of Instruments, section 8.

In 14 Am. and Eng. Ency. of Law, page 1046, the rule is thus stated in regard to the reformation of a deed of gift: "A court of equity will not lend its aid to reform a deed of gift at the instance of the donee."

In 34 Cyc., page 928, it is said: "In view of the fact that a voluntary conveyance is not supported by a consideration, the general rule is that an instrument representing such a conveyance cannot be reformed, unless there is, at least, a meritorious consideration, or unless all of the parties consent." On the same page it is also said: "No consideration having passed, and no right having vested, a correction of a voluntary conveyance will not be made on the application of the grantee or volunteer against the grantor or his heirs, or against his creditors. But where a grantee in a deed given for love and affection only, went into possession of land and made improvements and thereafter mortgaged the premises for a valuable consideration, a bill by the mortgagee for a correction of a mistake in the deed was maintained against the grantor and his heirs; also defects in a conveyance in a charitable use were supplied where money had been advanced and labor and material furnished on

the strength of the promise of the donor. *Powell* v. *Powell,* 73 Am. Dec. 724.

But it is argued that the case of *Miles* v. *Miles,* 84 Miss. 624, changes this rule so far as the state of Mississippi is concerned. We think this argument is based upon a misconception of the scope and extent of the opinion of the court in that case. As stated by Judge TRULY, speaking for the court on page 639:

"This principle (that equity will not interpose to order a reformation of a deed in favor of a volunteer) has no application to the case at bar. Appellees are not volunteers. A part of the consideration from Wm. H. Miles to them was the purchase by Theus N. Miles of his brother's interest in the estate of William R. Miles for the sum of ten thousand dollars." The decision in the Miles case, as shown both by the language of the opinion, and the syllabus, is based upon the ground that appellees are not mere volunteers. Having so decided, that is as far as the facts warrant the decision in going, and the balance of the opinion of the court may be considered mere *dicta.* But, on page 640 of the report, Judge TRULY further states:

"The well-settled rule that equity will not interfere in favor of a volunteer against a grantor to correct a mistake, or reform a defective conveyance, is based upon the idea that the volunteer is but the recipient of a bounty and has no enforceable claim or demand. This is sound law, but not applicable to the case here presented. Here the grantor's interests are not involved. This is not a contest between a prior and subsequent voluntary grantee, for appellants and appellees claim for the same source, and derive title by virtue of the same transaction."

It may be argued that this is exactly the case here, but an examination of exhibit one to the bill, to wit; the deed to T. H. Spencer, shows that it was executed on January 12, 1911, and exhibit three the deed to appellant, shows

that it was executed on January 13, 1911, and both instruments show that it was the intention of the grantor to convey to appellee such part of Otterburn Plantation as was not conveyed to appellant.

It is true that Judge TRULY says by way of *dicta* that the real intent of the grantor having been ascertained, a court of equity will decree that it be enforced, and that such cases do not fall within the rule denying the aid of equity to voluntary grantees, citing, *Adair* v. *McDonald,* 42 Ga. 506; *Huss* v. *Morris,* 63 Pa. 372, and 18 Ency. of Pl. & Pr. 787. An examination of these authorities will show that they do not bear out Judge TRULY. 18 Ency. of Pl. & Pr. 787, to which Judge TRULY refers is in reference to a controversy to which the grantor is not a party, and is as follows: "Although a volunteer is not a proper party complainant in a suit against a grantor for the reformation of a defective conveyance, the rule is otherwise where both complainant and defendant claim under the same deed and the grantor's interests are not at stake, and the claim of the plaintiff is that the grantor did not, in fact, make the instrument set up by the defendant,' citing *Adair* v. *McDonald, supra,* in which the court says: "Neither the authorities nor the principles on which this rule is founded apply to cases where the grantor is indifferent, has done nothing inconsistent with the deed proposed to be reformed, and the contest is, in fact, not between claimants under different deeds, under two independent acts of the voluntary grantor, but under the same deed."

The case at bar is not the same case to which the text from the Ency. of Pl. and Pr., page 787, applies, nor is it the same sort of case as *Adair* v. *McDonald, supra.* In the case at bar, we do not know whether the grantor is indifferent or not, because she is dead; but she has done something inconsistent with the deed proposed to be reformed. Before she executed the deed proposed to be reformed, she conveyed to appellee a part of Otterburn

Plantation, and then, on the next day, she conveyed to appellant all that part of Otterburn Plantation which she had not already conveyed to appellee. Here the appellant and appellee both claimed under different deeds, and under two independent acts of a voluntary grantor, and not under the same deed.

The case of *Cumming* v. *Freer*, 26 Mich. 130, also referred to by Judge TRULY, while strikingly in point with the Miles case, is certainly not strikingly in point with the case at bar, except that the draftsman of the bill in this case has evidently attempted to make it somewhat similar to the case of *Cummings* v. *Freer*, by alleging that is not a fact, viz: that Mrs. Spencer was dividing her property between her four children, and, on the same day that she made a conveyance of Otterburn Plantation to her two sons, she also made a conveyance of Glen Allen Plantation to her two daughters, as the land records will show. While this is *dehors* the record, be it as it may, the court will see that in *Cumming* v. *Freer*, Judge CHRISTIANCY bases his reason for refusing to apply the general principle that equity will not assist a grantee in a voluntary deed upon the ground that the voluntary grantee in that case had, on the faith of the deed, gone into possession of the land intended to be conveyed to him, made improvements thereon, and expended money upon it. None of these things appeal in favor of the appellee in the case at bar. *Miles* v. *Miles, supra,* does not apply, because the facts are different.

We respectfully submit that the demurrer to the amended bill should have been sustained, and that a decree should be entered herein reversing the decree below, and dismissing appellee's bill.

*Percy & Percy,* for appellee.

This case is so clearly within the principle laid down in the case of *Miles* v. *Miles*, 84 Miss. 624, as to hardly admit of argument. It is needless to burden this court

with any extended citation of authority, and we will confine ourselves merely to a citation of the utterance of the supreme court of this state. The case of *Miles* v. *Miles,* 84 Miss. 624, is identical with the case at bar, and we submit is decisive of the questions raised herein. Counsel seeks to differentiate the instant case from the Miles case, by stating that the instrument conveying the property to the complainant and the defendant were executed on different days, creating the inference that the instruments conveying the property in the Miles case were excuted contemporaneously. The properties which were the subject of controversy in the Miles case, were not conveyed by the same instrument, nor by different instruments, executed, at the same time, as a casual perusal of the facts in that case will disclose. The court does place emphasis on the fact that the instruments were executed in pursuance of the same transaction, that is one parcel of land was conveyed by deed and one parcel devised by will in pursuance of a determination on the part of Gen. W. R. Miles to apportion his property among his heirs. The bill in the instant case sets out that the deeds mentioned therein were executed in pursuance of the determination of the mother of the parties to divide her property, though counsel argues that the court bases its decision on the fact that a consideration was paid by Theus N. Miles to his brother for his interest in the estate as the ground upon which the court holds that the instrument was not a voluntary conveyance, we submit that while the court does say that the payment by Theus N. Miles was sufficient to prevent the operation of the rule against volunteers being invoked, the ground upon which the court really based its decision, and this is the principle governing the instant case, is as follows:

"But a second and stronger reason is that the instrument by which Quofoloma and Omega Plantations were vested in appellees, and that by which Mileston and Good Hope plantations were vested in appellant Mary R. Miles,

constitute, in fact, one and the same transaction. All parties deraign from a common source, and stand before the court in the same attitude as if they had inherited the property jointly, and then undertaken to amicably divide the same, and a mutual mistake had occured in their deeds of partition, the power of a court of equity to reform instruments and correct mistakes growing out of such transactions in proper cases is universally recognized.''

The appellee and the appellant deraign from a common source, their mother, and stand before the court in the same attitude as if they had inherited Otterburn Plantation jointly, and then undertaken to amicably divide the same, the appellee to get four hundred acres, and the appellant the balance of the place, and a mutual mistake had occurred in their deeds of partition. As said by the court ''the power of a court of equity to reform instruments and correct mistakes growing out of such transactions in proper cases is universally recognized.''

Counsel cites a great many cases holding that a court of equity will not reform a voluntary conveyance. As announcing abstract principles of law, they are correct, but they have no application to the instant case.

STEVENS, J., delivered the opinion of the court.

Appellant, as defendant in the court below, prosecutes this appeal from an order overruling a demurrer to the bill of complaint exhibited by appellee T. H. Spencer, seeking to reform a deed executed by Carrie T. Spencer, the mother of the parties hereto, whereby certain lands were conveyed to the appellee and in which there is an alleged mistake. The litigation presents an unfortunate controversy between brothers. The bill charges that S. M. Spencer, Sr., the father of both appellant and appellee, was at one time the owner of certain valuable plantations in Washington county, a division of which he intended to make among his four children, the two sons, parties to this litigation, and two daughters; that while

the property originally belong to Mr. Spencer, Sr., it was, on account of financial embarrassments, conveyed to Carrie T. Spencer, appellee's mother; that the father exercised absolute supervision and control of the property while he lived and often expressed á desire that what is known as Glenn Allen plantation should be conveyed by deed to the two daughters, and the Otterburn plantation, consisting of one thousand four hundred and eighty-two acres, should be conveyed to the two sons; that Carrie T. Spencer, the mother, was advised of these plans and concurred therein; that appellant prevailed upon his father to postpone a division of the Otterburn plantation for a year or two in order to permit appellant, who was living upon and managing or supervising this plantation, to work out a debt then existing on said property. The bill further charges that the father contemplated deeding six hundred acres of Otterburn plantation to the complainant, and the remainder, embracing the gin, mansion house, and other improvements, was to be deeded to appellant; that the latter was to discharge the indebtedness, and to build for his brother, the appellee, a residence valued at two thousand five hundred dollars; that this was the division which the parents contemplated making and which they frequently discussed with other members of the family. The bill further charges that this plan was never executed during the lifetime of Mr. Spencer, Sr., but that, after the death of the father, the mother undertook to carry out the division of the estate; that appellant, being the older of the two sons and having the active management of the property, exercised great influence with his mother, then an aged woman, and induced her to agree upon giving appellee only four hundred acres of Otterburn; that complainant in the interest of peace yielded to this plan; that appellant in the execution of this plan employed a civil engineer to partition the plantation, and himself pointed out to the engineer the land which was to be allotted to appellee and, after having the

survey made, went to Greenville and had deeds prepared conveying to the two daughters the Glenn Allen plantation and conveying to appellant and appellee Otterburn plantation; that in having the deed prepared the deed to appellant conveyed all of the Otterburn plantation, excepting that portion conveyed to appellee, the complainant; that the separate deed in favor of appellee as a matter of fact embraced only three hundred and seventeen acres, but appellant represented both to his mother and to the complainant that it contained more than four hundred acres. The bill charges that the deed was executed as a result of the fraud of appellant and was accepted without any knowledge or intimation to the complainant that the deed had a shortage in the acreage. It is charged that eighty three acres should have been conveyed in the deed to the complainant in addition to the lands therein described, and that this eighty three acres are worth several thousand dollars. Appellant answered so much of the bill as charged fraud, and with his answer submitted a demurrer.

There is only one ground of the demurrer which merits discussion. Appellant by demurrer challenges the right of the complainant as a voluntary grantee to any reformation whatever. Appellant invokes the general rule that a voluntary conveyance is not supported by a consideration, and that such instrument cannot be reformed unless there is some consideration or unless all parties consent. The rule invoked by appellant would certainly apply were this a contest between complainant, as grantee, and his mother, the donor. The bill shows that the mother is dead, and therefore she, as grantor, cannot maintain a bill against appellant to correct the alleged mistake. This then being a contest between the two sons of the grantor, a contest between heirs, both of whom are voluntary grantees, the rule invoked by appellant does not apply. If as a matter of fact the mother intended to convey a larger portion of the plantation to the

younger son, then his equity, in our judgment, is superior to the right of the other brother to rely upon the defense here interposed. The transaction set out in the bill is in the nature of a family settlement, and conveyances in execution of a family settlement constitute an exception to the rule. As stated by our court in *Miles* v. *Miles,* 84 Miss. 624, 37 So. 112:

"All parties deraign from a common source, and stand before the court in the same attitude as if they had inherited the property jointly, and then undertaken to amicably divide the same, and a mutual mistake had occurred in their deeds of partition. . . . The power of a court of equity to reform instruments and correct mistakes growing out of such transactions in proper cases is universally recognized."

The Miles Case is the only one by our court to which counsel direct our attention as bearing directly upon the question presented for decision. We find very few cases on the main point of this case. The cases of *Wycke* v. *Greene,* 16 Ga. 49, and *McMechan* v. *Warburton,* Irish Law Reports, 1 Ch. Div. 435 (Irish Law Reports 1895, 1896, p. 566), are applicable.

The latter case presented the same situation as here— where the donor is deceased and the contest is between the grantees. The syllabus reads:

"The court will rectify a voluntary deed after the death of the donor where it is clearly shown that, through mistake, the deed failed to carry out the proved intention of the donor."

In the opinion of the Vice Chancellor rendered in 1894, it is said:

"It was contended by the defendant Warburton that, as this was a voluntary deed, this court cannot interfere to rectify it in favor of volunteers. The elementary principle of this court, that it will not interfere to enforce specific performance of an incomplete voluntary agreement, or to rectify an erroneous voluntary disposition of proper-

ty in favor of a volunteer, is subject to this exception, that after the death of the donor it will interfere to rectify a disposition which is clearly proved to have, through mistake, failed to carry out the proved intention. The principle is, I think more correctly stated by confining it to this, that the court will not rectify a voluntary disposition against the donor. That it will do so in favor of a donor is shown by the case of *Lackersteen* v. *Lackersteen*, 30 L. J. Ch. (N. S.) 5, where a voluntary settlement was rectified by Wood, V. C., at the instance of the settlor. This explains the view taken by Romilly, M. R., in *Lister* v. *Hodgson*, L. R. 4 Eq. 34, where he stated the exception I have mentioned in case of a deceased donor, that upon clear proof of the intention of the donor, which, by a mistake, was not correctly carried out by the instrument of gift according to such intention, this court will interfere to correct the mistake, and thus act in favor of the intention. If the donor were living it would have, of course, been competent for him to consent to such rectification, or to dissent from it. If the later, it could not be reformed against his will, for a volunteer must take the gift as he finds it; but after his death, and in absence of proof of any change of intention, it cannot be assumed that he would have dissented, and it might even be presumed that he would not dissent. In this view, *Lister* v. *Hodgson*, L. R. 4 Eq. 30, is not a departure from the true principle, and it is certainly an authority for the plaintiffs on this point."

The court of appeal unanimously affirmed this decision of the Vice Chancellor, and the language which we have quoted, we believe, expresses the better view. We unhesitatingly adopt it as equitable. The action of the learned chancellor in overruling the demurrer is approved, and the cause remanded, with leave to appellant to answer the bill within thirty days after receipt of mandate by the chancery clerk.

*Affirmed and remanded.*