O'CONNOR, Respondent, v. McCABE, Appellant.
McCABE, Cross-Complainant and Appellant, v. O'CONNOR
et al., Cross-Defendants and Respondents.

(176 N. W. 43.)

(File No. 4567.   Opinion filed January 30, 1920.   Rehearing denied
March 26, 1920.)

1. Quieting Title—Cross-complaint to Reform Description in Deed
Given Without Consideration—Rule Re Heirs of Grantor.

While, as between a grantor in a deed of realty given with-
out consideration and the grantee, a court of equity will not
decree reformation of the deed without consent of both par-
ties, yet, as between grantee and heirs at law of the grantor,
after death of grantor, it will interfere to rectify disposition
clearly proven to have failed through mistake to carry out the
proved intention; this in absence of proof of any change of
intention by grantor before his death. So held, where the deed
misdescribed the property intended to be conveyed.

2. Evidence—Reforming Misdiscription in Deed of Deceased Grantor,
Versus Heirs—Declaration of Decedent Re Deed, Competency.

In a suit to quiet title to realty, defendant, grantee, having
by cross-complaint sought reformation in description of the
deed as against grantor's heirs, held, that testimony by one of
plaintiff heirs, that decedent immediately prior to his death, in
response to a question by the priest as to whether he had dis-
posed of his property and settled his worldly affairs, stated
"Yes I have left this all in the papers which I have with Mr.
Bulow," being the lawyer in whose hands he had left the deed
"until something happened," should have been admitted in
evidence.

3. Reformation of Instruments—Correcting Mistake in Decedent's
Voluntary Deed, Re Heirs—Case Likened to Will—Equity
Powers.

A court of equity has power to correct a mistake in descrip-
tion in a voluntary deed, after grantor's death and as against
heirs, in a suit by heirs to quiet title with cross-complaint by
grantee for such reformation; the case being similar to that
of a will (Sec. 666 Rev. Code 1919), since both such deed and
a will are voluntary instruments; and, since in interpretation
of a will the principle to be observed is ascertainment of in-
tention of testator, (Rev. Code 1919 Sec. 643), the same prin-
ciple is applicable in the case at bar; and since in interpreta-
tion of a will, that one of two modes is preferable which will
prevent total intestacy (Rev. Code 1919, Sec. 652), correction
of description in a deed should be permitted rather than that
the grant should fail.

4.  **Same—Misdescription in Deed—Grantor's Intention, Clear Intention Re, Evidence Sustaining—Rule Versus Grantor's Heirs—Equity Powers.**

  While in determining whether a misdescription in a voluntary deed should be reformed, evidence of grantor's intention should be most clear and convincing, yet when it discloses grantor's intention and that the mistake in description was purely the scrivener's clerical error, a court of equity has power, and ought to correct the mistake, especially where it is clear that grantor intended his foster brother, the grantee, should have the farm whose description is sought to be substituted in the deed, and that his sister should have certain other realty; and the heirs at law have no equitable claim to the property.

5.  **Same—Relationship Between Grantor and Grantee, Their Companionship, as Consideration for Deed—Rule Versus Heirs.**

  If it be thought that court should follow precedent, even though contrary to the court's conception of law, and declare for this jurisdiction that a voluntary deed may not be corrected after grantor's death, against consent of his heirs at law, yet the fact of the virtual relation of the grantor and his foster brother grantee, their long companionship, together with the facts, brought out upon new trial, that grantor's lawyer was instructed by him not to deliver the deed to grantee until latter had paid all of grantor's debts except mortgages on the land, including expense of grantor's last illness and funeral, that the lawyer advised grantee he must do those things before he could get the deed, though not advising him that such direction was that of grantor, grantee, believing it merely the direction of the lawyer and not knowing until after judgment that it was grantor's direction, paid all said debts and expenses amounting to more than $1180, after which deed was delivered to him—show a sufficient consideration to take such deed out of the class of voluntary instruments after death of grantor.

Appeal from Circuit Court, Union County. Hon. Louis L. Fleeger, Judge.

Action by J. C. O'Connor and others against John McCabe, to quiet title to realty; defendant having under a cross-complaint sought reformation of the description in the deed in question. From a judgment for plaintiffs, and from an order denying a new trial, defendant and cross-complainant appeals. Reversed, and remanded for further proceedings.

*Charles Stickney, Fred H. Free,* and *E. A. Burgess,* for Appellant.

*Thomas McInerny,* for Respondent.

(1) To point one of the opinion, Appellant cited: Mason v. Moulden, 58 Ind. 1; Appeal of Ferguson, 11 Atl. Rep. 885; Spencer v. Spencer, 75 So. 770.

Respondent cited: Story Eq. Jur., Sec. 987; Enos v. Stewart (Cal.), 70 Pac. 1005; Shears v. Westover (Mich.), 68 N. W. 266; Dawson v. Dawson, 16 N. C. 101, 18 A.m Dec. 573; Powell v. Powell, 73 A. D. 724.

(4) To point four, Appellant cited: Hunt v. Rousmaniere, 26 U. S. 1; 7 L. Ed. 1; Rose's Notes 499; Coleman v. Coleman, 153 Ia. 552, 133 N. W. 758; Parish v. Camplin, 37 N. E. 607; Newland v. Baptist Church, 100 N. W. 612, 137 Mich. 335.

(5) To point five, Appellant cited: Smith v. Barksdale, 110 Ga. 278, 34 S. E. 582; Cummings v. Freer, 26 Mich. 129; Fluke v. Crane (Ill.), 104 N. E. 690.

GATES, J. The undisputed evidence in this case shows that one Frank O'Connor owner the south*east* quarter of a certain section of land in Union county, S. D.; that it was the only farm he owned; that in February, 1916, he went to a lawyer and asked him to draw a deed to his farm in favor of defendant John McCabe; that by mistake of the lawyer the description in the deed was made to read the south*west* quarter instead of the south*east* quarter of that section; that the deed, reciting the consideration to be $1 and other valuable considerations, was executed and delivered to the lawyer; that the grantor told the lawyer to put the deed in his safe and keep it, and "when anything happened" to grantor to deliver the deed to John McCabe; that at the same time grantor executed a deed to city lots to his sister Katie and delivered the same to the lawyer, which sister is not one of the parties plaintiff; that grantor died intestate in June, 1916, aged about 44 years; that after such death the lawyer discovered the mistake and unlawfully corrected the deed accordingly; that the deed was thereafter delivered to John McCabe; that grantee was seven years younger than grantor, and that grantee had been adopted by grantor's parents when he was five years of age and resided with them until six years before the trial; that at the time of grantor's death he and grantee were living together on the farm, both being unmarried, and grantee continued in possession of the premises; that grantee never knew of the deed until after

grantor's death and never paid grantor anything for it; that upon presenting the deed for record the register of deeds unlawfully inserted therein "mortgages of $7,800 of record assumed by the grantee."

In February, 1917, five of the brothers and sisters of grantor brought this action to quiet title in them to the undivided five-eighths of the farm. The grantee filed an answer to the complaint and also a cross-complaint against all the heirs at law of grantor and sought reformation of the deed. The trial court held that there was no consideration for the deed, and adjudged plaintiffs to be the owner of the undivided five-eighths of the farm, but made no disposition of the issues raised by the cross-complaint. A motion for new trial was made, and it appeared thereon that the lawyer had been instructed by grantor not to deliver the deed to grantee until grantee had paid all of the debts of grantor (except mortgages on the land), including the expenses of grantor's last illness and funeral; that the lawyer advised grantee that he must do those things before he could get the deed, but did not advise him that such direction was the direction of the grantor; that grantee, believing it was merely the direction of the lawyer, and not knowing until after judgment that it was the direction of grantor, paid all the aforesaid debts and expenses, amounting to more than $1,180; and that, after satisfying the lawyer that all such debts and expenses had been paid, the lawyer delivered the deed to grantee. The defendant and cross-complainant appealed from the judgment and order denying a new trial.

[1] It is conceded in the briefs that the trial court decided the cause upon the theory that the grant was without consideration, and that therefore equity would not reform the instrument. The rule as stated in 23 R. C. L. 344, and as sustained by the great weight of authority, is as follows:

"It is sometimes stated as a general rule that equity will not undertake to reform a conveyance or contract which is merely voluntary and based on no consideration; or, as some authorities state the rule, equity will not reform a voluntary conveyance without the consent of all parties. But the actual rule, stated with its proper limitations, is that a court of equity will not reform the instrument as the suit of the grantee or

those holding under him, as against the grantor or his suc-
cessors. There being no consideration moving to the grantor,
the volunteer has no claim on him. If there is a mistake or
a defect, it is a mere failure in a bounty which, as the grantor
was not bound to make, he is not bound to perfect. Equity
will not, therefore, lend the volunteer its aid."

See, also, notes to Ann. Cas. 523.

That the above rule is correct as between the grantor and
the grantee, we do not question. But we do question the
soundness of the rule as between the grantee and the heirs
at law of the grantor. It seems to us that the correct principle
was stated in Spencer v. Spencer, 115 Miss. 71, 75 South. 770,
where the following from McMechan v. Warburton [1895-96]
Irish Law Reports, 566, was quoted wth approval:

"It was contended by the defendant Warburton that, as
this was a voluntary deed, this court cannot interfere to rectify
it in favor of volunteers. The elementary principle of this
court that it will not interfere to enforce specific performance
of an incomplete voluntary agreement, or to rectify an erroneous
voluntary disposition of property in favor of a volunteer, is subject
to this exception, that after the death of the donor it will interfere
to rectify a disposition which is clearly proved to have, through
mistake, failed to carry out the proved intention. The principle is,
I think, more correctly stated by confining it to this, that the court
will not rectify a voluntary disposition against the donor. That it
will do so in favor of a donor is shown by the case of Lackersteen
v. Lackersteen, 30 L. J., Ch. (N. S.) 5, where a voluntary settle-
ment was rectified by Wood, V. C., at the instance of the settlor.
This explains the new view taken by Romilly, M. R., in Lister
v. Hodgson, L. R. 4 Eq. 34, where he stated the exception I
have mentioned in case of a deceased donor, that upon clear
proof of the intention of the donor, which, by a mistake, was
not correctly carried out by the instrument of gift according
to such intention, this court will interfere to correct the mistake,
and thus act in favor of the intention. If the donor were
living, it would have, of course, been competent for him to
consent to such rectification or to dissent from it. If the
latter, it could not be reformed against his will, for a volun-
teer must take the gift as he finds it; but after his death, and

in the absence of proof of any change of intention, it cannot be assumed that he would have dissented, and it might even be presumed that he would not dissent.  In this view Lister v. Hodgson, L. R. 4 Eq. 30, is not a deparature from the true principle, and it is certainly an authority for the plaintiffs on this point."

[2]  In the instant case not only does it not appear that there was any change in the intention of the grantor, but the defendant sought to prove affirmatively that there had been no change.  He offered to prove by the testimony of one of the plaintiffs in this action that immediately prior to grantor's death, in response to a question put to him by Father Burke as to whether or not grantor had disposed of his property and settled his worldly affairs, the grantor said: "Yes, I have left this all in the papers which I have with Mr. Bulow." This evidence should have been received.            ,

[3]  If a court of equity has not power to correct a mistake of this kind in a voluntary deed after the death of the grantor, why has it power to correct a mistake of this kind in a will after the death of the testator?  If the instrument in question had been a will, the weight of authority, under the particular facts of this case, would have permitted the very correction sought to be made.  Notes, 16 L. R. A. 321, 6 L. R. A. (N. S.) 943, and L. R. A. 1915E, 1008.  Especially would this have been the case under our section 666, Rev. Code 1919.  The one instrument is no more a voluntary instrument than the other, and we can conceive of no sound legal principle which should allow the correction in the one case and not in the other.  If in the interpretation of a will the cardinal principle to be observed is the ascertainment of the intention of the testator (Rev. Code 1919, § 643), why should not the same principle be applied in the case at bar?

If in the interpretation of a will that one of two modes is to be preferred which will prevent total intestacy (Rev. Code 1919, § 652), why should not the correction of the description in the present instrument be permitted rather than that the grant should utterly fail?

[4]  While in such case the evidence showing the grantor's real intention should be most clear and convincing and free

from suspicion, yet, when such evidence does disclose the intention and that the mistake was purely the clerical error of the scrivener, we think that a court of equity has power, and ought, to correct the mistake. In this case it is clear beyond peradventure that the grantor intended that his foster brother should have the farm and that his sister Katie should have the city property; how, therefore, can it be said that the heirs at law have any equitable claim to the property?

[5] But if it be thought that we should follow precedent even though it be contrary to our conception of the law, and declare for this jurisdiction that a voluntary deed may not be corrected after the death of grantor against the consent of his heirs at law, yet we think the fact of the virtual relation of the grantor and the grantee and their long companionship, and the facts brought out upon the motion for a new trial, showed a sufficient consideration to take this instrument out of the class of voluntary instruments after the death of the grantor. 23 R. C. L. 345, 346; 10 Ann. Cas. 524.

Upon both grounds we reverse the judgment and order appealed from, and direct that the case be remanded for further proceedings in harmony with this opinion.