LAUNDREVILLE, APPELLANT, *v.* MERO ET AL., RESPONDENTS.

(No. 6,505.)

(Submitted October 1, 1929. Decided October 31, 1929.)

[281 Pac. 749.]

44

*Mr. W. E. Keeley* and *Miss Virginia McGuire,* for Appellant, submitted a brief; *Mr. Keeley* argued the cause orally.

*Mr. K. W. MacPherson* and *Mr. S. P. Wilson,* for Respondents, submitted a brief; *Mr. Wilson* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This action was brought by plaintiff to reform a deed executed by John Quinlan conveying certain property to her. The complaint predicates the right to relief upon the ground of mistake, in that the deed conveyed only 200 acres of land,

whereas the grantor intended to convey 240 acres. The answer of defendants is a general denial of the material allegations of the complaint and an affirmative defense in which it is alleged that John Quinlan was the owner of the forty-acre tract in controversy, and that the defendants, as his heirs, are each entitled to a one-third interest therein. Issue was joined by reply, and the cause was tried to the court. Judgment was entered upholding the defendants' contention, from which plaintiff appeals.

The material facts are undisputed. The evidence, briefly summarized, shows: That plaintiff and the defendants are sisters and the only living issue and sole heirs of John Quinlan, who died intestate on December 4, 1920; that for a number of years prior to his death he resided with plaintiff and her husband on a tract of land consisting of 237.81 acres owned by Quinlan until April 16, 1919, at which time he conveyed all but forty acres by deed to plaintiff; that defendant Annie Lowery and her husband for many years prior to 1919 resided on another tract of land consisting of 160 acres, hereinafter referred to as the Lowery tract, also owned by Quinlan; and defendant Nellie Mero, with her husband, for many years prior to 1919 resided on a third tract of land belonging to Quinlan, consisting of 240 acres, hereinafter referred to as the Mero tract. On April 16, 1919, Quinlan by deed conveyed the Lowery tract to defendant Annie Lowery and the Mero tract to defendant Nellie Mero; the three tracts embraced all the land owned by Quinlan at the time of making the deeds. The forty-acre tract in question here is grazing land and borders on the south side of the land actually conveyed by the deed to plaintiff; plaintiff and her husband used such tract together with that conveyed to her ever since they were married in 1905. They had paid annual crop rental to Quinlan prior to the making of the deed but none thereafter; the forty acres were used for grazing and at times some hay was cut thereon. Quinlan was unable to read or write. After his death Peter Laundreville, husband of plaintiff, was appointed administrator of his estate; the estate was administered upon, an order

of distribution made, and a final discharge of the administrator obtained, all on the supposition that deceased owned some personal property but no real estate. The decree of distribution contained the usual clause decreeing to the parties here, share and share alike, subsequently discovered property of the decedent, if any.

In 1920 Frank Conley attempted to buy the forty acres in question from Quinlan and was advised by him that he had deeded all his land away and that this forty belonged to Laundreville. Peter Laundreville testified that deceased, before making the deeds, told him he was going to divide up his property and give "everybody [meaning thereby his three daughters] whatever tract they were living on"; that thereafter Quinlan went to the office of S. P. Wilson to have the deeds prepared; Quinlan at that time was eighty-nine years of age; Laundreville was present when the deeds were executed; they were all made simultaneously; subsequently they were recorded and delivered. There is a dispute as to who did the recording and delivering, but we deem that immaterial. The forty-acre tract in question, along with the land covered by the deed to plaintiff, was acquired by Quinlan from the same source and by one deed, and was acquired from a source separate and distinct from that of the Mero and Lowery tracts, and it was all considered one farm occupied since 1905 by plaintiff and her husband. Plaintiff paid all taxes on the forty acres accruing subsequent to the execution of the deeds. Quinlan in his lifetime several times told Peter Laundreville that there were 240 acres in the tract conveyed to plaintiff, and remarked to him after the deeds were made that "he didn't have an acre of land to his name." The deed recites a consideration of $10, but evidence was introduced without objection that no money consideration was given. Since the deeds were made, plaintiff has put in a new fence on the west side of the forty-acre tract and on part of the south side and has used it ever since as a part of her farm. The fact that the deed to plaintiff did not include the forty acres was not discovered until about June 1, 1927.

In the light of this uncontradicted evidence plaintiff contends that the court erred in not reforming the deed so as to include the forty acres in question and thus give effect to the intention of the grantor. Defendants contend that, since ▉▉▉▉ the deed was purely voluntary, a court of equity may not grant relief by reformation.

The rule contended for by defendants is stated in 22 Cal. Jur., page 714, section 5, as follows: "In harmony with the policy of equity to correct mistakes only in furtherance of justice, it is a general rule that courts will not reform purely voluntary conveyances, unless all the parties consent." This rule was given recognition in *Johnson* v. *Austin*, 86 Ark. 446, 111 S. W. 455, in *Tuthill* v. *Katz*, 174 Mich. 217, 140 N. W. 519, in *Fickes* v. *Baker*, 36 Cal. App. 129, 171 Pac. 819, and perhaps in other cases. (See, also, 23 R. C. L. 344, 345.) This rule, if correct, as a practical matter bars equitable relief in controversies wherein defective conveyances are sought to be corrected, since, if all parties consent to a reformation, the necessity for invoking the aid of any court disappears. Courts are constituted to hear and decide controversies, to settle disputes, not to pronounce benedictions upon agreements. A better statement of the general rule is that courts will not reform purely voluntary conveyances.

The rule has its own limitations and exceptions. It was originally established in litigation between the donee and the donor; the universal rule being that the courts will not reform a voluntary deed in an action brought by the grantee against the grantor. The reason for the rule is that when one accepts the bounty of another he may not be heard to say, as against the donor, that something else should have been given. (*Robertson* v. *Melville*, 60 Cal. App. 354, 212 Pac. 723.) The grantor, not having received any consideration for the conveyance, is accorded the privilege of changing his mind and may not be compelled to make a gift previously intended and of which he has since repented, when no rights of others have intervened. (*Adair* v. *McDonald*, 42 Ga. 506; *Lister* v. *Hodgson*, L. R. 4 Eq. 30, 34; 23 R. C. L. 345.)

Does the reason for this rule apply to the heirs of the grantor? Does the jurisdiction of a court of equity to reform a voluntary conveyance, so as to express the intention of the donor, in a suit by the grantee against the heirs of the grantor, depend upon the consent of the heirs? Some courts have answered in the affirmative. Among them may be cited: *Willey* v. *Hodge*, 104 Wis. 81, 76 Am. St. Rep. 852, 80 N. W. 75; *Enos* v. *Stewart*, 138 Cal. 112, 70 Pac. 1005; *Lyon* v. *Balthis*, 24 Ohio App. 37, 155 N. E. 815; *Triesback* v. *Tyler*, 62 Fla. 580, 56 South. 947.

It should be observed, however, that the facts in the *Enos Case* differ materially from those here involved. In that case the heirs opposing the reformation were unprovided for, and this fact seems to have had some weight with the court, for it said: "This, therefore, is an action by a grantee under a voluntary defective conveyance to obtain the aid of a court of equity to correct and reform the conveyance as against an heir at law who is unprovided for by deceased." This seems also to have been the basis of the decision in the *Triesback Case*.

The reason for the rule that prohibits equity from reforming a voluntary deed as against the donor does not exist in favor of his heirs. This conclusion is not without sustaining authority. Thus in *McMechan* v. *Warburton*, 1 Ch. Div. 435, 1896 Irish Reports, volume 1, page 435, it was said: "It was contended by the defendant Warburton that, as this was a voluntary deed, this court cannot interfere to rectify it in favor of volunteers. The elementary principle of this court that it will not interfere to enforce specific performance of an incomplete voluntary agreement, or to rectify an erroneous voluntary disposition of property in favor of a volunteer, is subject to this exception: that after the death of the donor it will interfere to rectify a disposition which is clearly proved to have, through mistake, failed to carry out the proved intention. The principle is, I think, more correctly stated by confining it to this, that the court will not rectify a voluntary disposition against the donor. That it will do so in favor of a donor is shown by the case of *Lackersteen* v. *Lackersteen*, 30 L. J.

Ch. (n. s.) 5, where a voluntary settlement was rectified by Wood, V. C., at the instance of the settlor. This explains the view taken by Romilly, M. R., in *Lister* v. *Hodgson,* L. R. 4 Eq. 34, where he stated the exception I have mentioned in case of a deceased donor, that upon clear proof of the intention of the donor, which, by a mistake, was not correctly carried out by the instrument of gift according to such intention, this court will interfere to correct the mistake, and thus act in favor of the intention. If the donor were living, it would have, of course, been competent for him to consent to such rectification or to dissent from it. If the latter, it could not be reformed against his will, for a volunteer must take the gift as he finds it; but after his death, and in absence of proof of any change of intention, it cannot be assumed that he would have dissented, and it might even be presumed that he would not dissent.''

The same question under similar facts was before the supreme court of Mississippi, in *Spencer* v. *Spencer,* 115 Miss. 71, 75 South. 770, 771, where the court said: ''Appellant invokes the general rule that a voluntary conveyance is not supported by a consideration, and that such instrument cannot be reformed unless there is some consideration or unless all parties consent. The rule invoked by appellant would certainly apply were this a contest between complainant, as grantee, and his mother, the donor. The bill shows that the mother is dead, and therefore she, as grantor, cannot maintain a bill against appellant to correct the alleged mistake. This then being a contest between the two sons of the grantor, a contest between heirs, both of whom are voluntary grantees, the rule invoked by appellant does not apply. If as a matter of fact the mother intended to convey a larger portion of the plantation to the younger son, then his equity, in our judgment, is superior to the right of the other brother to rely upon the defense here interposed. The transaction set out in the bill is in the nature of a family settlement, and conveyances in execution of a family settlement constitute an exception to the rule. As stated in our court in *Miles* v. *Miles,* 84 Miss.

624, 37 South. 112: 'All parties deraign from a common source, and stand before the court in the same attitude as if they had inherited the property jointly, and then undertaken to amicably divide the same, and a mutual mistake had occurred in their deeds of partition. * * * The power of a court of equity to reform instruments and correct mistakes growing out of such transactions in proper cases is universally recognized.' "

Mr. Justice Gates, speaking for the court in *McCabe* v. *O'Conner,* 42 S. D. 506, 176 N. W. 43, 44, after adverting to the general rule that equity will not aid a volunteer in reforming a deed, said: "That the above rule is correct as between the grantor and the grantee, we do not question. But we do question the soundness of the rule as between the grantee and the heirs at law of the grantor." The court concluded that equity had jurisdiction in a controversy between the grantee and the heirs of the grantor to reform the deed so as to give expression to the intention of the grantor.

The supreme court of South Carolina refused to adhere to the doctrine that a voluntary conveyance may not be reformed as against the heirs of the grantor, in the case of *Lawrence* v. *Clark,* 115 S. C. 67, 104 S. E. 330, 334. In that case Mr. Justice Fraser, speaking for the court, said: "We know there are decisions in other jurisdictions that hold that a voluntary deed cannot be reformed at the demand of the grantee over the objection of the grantor, and that the right of the grantor extends to his heirs at law. The authorities are not binding, and we will not follow them, because the reason of the rule does not extend to the heirs at law. The agreement, being without consideration, could not be enforced against the grantor. It was purely a matter of grace on his part. The grantee paid nothing, and it came with bad grace from him to attempt to force a mere courtesy. The grantor was under no obligation to give what is contained in his deed, and he cannot be required to alter the terms of the gift. The heir at law has given nothing. It never was his. The grantee does not even owe him thanks. When a court or-

ders the reformation of a deed, the reformed deed necessarily speaks as of the date of its original execution. Equity says that the reformed deed is to be considered as the true deed, subject, of course, to the rights of subsequent creditors and purchasers for value, who may have been misled to their injury. When that is done, the heir at law has nothing to relinquish, and never had. No injustice is done to the heir at law."

That relief by reformation is proper as against the heirs of the donor is also implied in the decision in the case of *Gibson* v. *Johnson*, 148 Ark. 569, 230 S. W. 578.

"When the reason of a rule ceases, so should the rule itself." (Sec. 8739, Rev. Codes 1921.)

The reason for the rule preventing a court of equity from reforming voluntary conveyances as against the grantor does not extend to the heirs, and we decline to extend the rule in their favor. Each case must be governed by its own facts and circumstances. If there is equity in plaintiff's case as against the rights asserted by the defendants, a reformation should be decreed. If plaintiff's case is lacking in the elements that go to move the conscience of a court of equity, relief should be denied on that ground, but not for want of jurisdiction in the court because of the voluntary character of the conveyance.

Here the conveyance was fully executed; the plaintiff retained possession of the property and made some improvements thereon; the defendants have in no way been injured; according to the record they have received everything that the father intended they should have; no rights of innocent third parties have intervened. Under the record here presented, the father would doubtless have desired to make the correction sought by this action, had he learned of the mistake in his lifetime. Under the facts of this case, a court of equity should in furtherance of justice grant relief by reformation.

Defendants contend, also, that the mistake here in question was not a mutual mistake of the parties within the meaning of section 8726, Revised Codes of 1921. A like question, under a similar statute, was presented to the supreme court of Georgia, in *Crockett* v. *Crockett*, 73 Ga. 647, and held with-

out merit. The court in that case said: "The defendant says that the plaintiff was not entitled to have the deed reformed, because the mistake was not mutual and relies on section 3124 of the Code to sustain this position. This would present a question of some difficulty, if it had not already been decided by this court. In the case of *Mitchell* v. *Mitchell*, 40 Ga. 11, it was held that the grantees being volunteers, where the donor made a mistake in the boundary of certain land, that the deed should be reformed, where it was clearly shown that the grantor had made a mistake, though the grantee was not cognizant of the mistake at the time of the conveyance. One of the main points in that case relied on by the grantees was that the mistake was not mutual between donor and donee, and the donee was not present when the deed was executed, and relied on the same section of the Code which is relied on in this case. So that it will be seen that the question is identical in both cases. We think that this adjudication settles this point in favor of the plaintiff in error."

Section 7531, Revised Codes of 1921, provides: "When, through fraud, mistake, or accident, a written contract fails to express the real intention of the parties, such intention is to be regarded, and the erroneous parts of the writing disregarded."

In so far as voluntary conveyances are concerned, the contracts are by their very nature unilateral. They are lacking in mutuality. But we think a court of equity has inherent power in a proper case to grant relief by reformation of a voluntary conveyance so as to have the deed express the intention of the grantor, even though, strictly speaking, the mistake is not mutual.

Contention is also made that the evidence given by Frank ■ Conley to the effect that decedent, after the making of the deeds, told him that he had deeded all his land away, and that the forty acres in question belonged to Laundreville, was inadmissible as hearsay. This evidence was admissible by reason of subdivision 4, section 10531, Revised Codes 1921, which makes admissible "the act or declaration of a deceased person done or made against his interest in respect to his

real property." And declarations of a decedent against his pecuniary interest are also admissible against his successors in interest. (Sec. 10514, Id.)

Under defendants' theory of the case, the decedent, when he made the statement, was and at all times since until his death had been the owner of this forty-acre tract. The statement was admissible as some evidence tending to show the mistake here asserted and to show the real intent of the grantor. (*McCabe* v. *O'Conner*, supra.)

We recognize the universal rule that, in order to grant ▮▮▮ relief by reformation on the ground of mistake, the proof must be clear and convincing. The evidence here meets that requirement. "That the trial court may not disregard uncontroverted credible evidence is fundamental." (*Sylvain* v. *Page*, 84 Mont. 424, 276 Pac. 16, 20.) This being an equity case, it is our duty to determine from the record whether the evidence preponderates against the decision of the trial court. (*Giebler* v. *Giebler*, 69 Mont. 347, 222 Pac. 436.) As before stated, the evidence on the material issues is uncontradicted.

The evidence clearly preponderates against the decision of the trial court, even though some of the plaintiff's witnesses were contradicted on collateral matters.

The trial court erred in entering judgment sustaining defendants' contention and denying the relief sought by plaintiff.

The judgment is reversed, and the cause remanded to the district court of Powell county, with direction to enter judgment for the plaintiff.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and FORD concur.