HAZLETT *et al. v.* BRYANT *et al.*

*(Nashville,* December term, 1950.)

Opinion filed March 9, 1951.

Rehearing denied June 16, 1951.

G. E. White, and C. R. Watters, both of Lewisburg, for appellants.

H. Grady Wade, of Lewisburg, C. D. Lamb, and W. T. McCown, Jr., both of Fayetteville, for appellees.

MR. JUSTICE GAILOR delivered the opinion of the Court.

As this petition for certiorari is presented to us the only question involved is whether or not, under the facts and circumstances of this particular case, the Chancellor should have decreed reformation of a deed of gift which, by mistake of the lawyer drawing the deed, contained an erroneous description of a certain tract of land.

The original bill, as several times amended, alleges that the Complainants, as the surviving heirs at law and next of kin, of Mary Lou Hazlett Bryant, who died September 13, 1947, are the owners of a tract of land in Lincoln County, lying in the 9th Civil District, and containing 157.92 acres; that the Defendant, M. E. (Jack) Bryant, the surviving husband of Mary Lou Bryant, is in possession of this tract of land; claims it as his own, is cutting timber therefrom and farming thereon. Among other things, the bill prays that the Defendant Bryant be dispossessed, and that the ownership of Complainants be decreed and the land sold for partition.

The Defendant M. E. (Jack) Bryant filed an answer and cross-bill in which he averred that by deed from his

wife, he is the owner and in rightful possession of said land, and denies that the Complainants have any claim thereto or right to possession or ownership thereof. It is alleged in the cross-bill that prior to May 22, 1947, Mary Lou Bryant was the owner of two tracts of land in Lincoln County which she inherited from her father, one tract is in the 11th Civil District and known in this record, as Tract No. 1, containing 123 acres, and being the home-place upon which the Defendant and his wife had lived during their marriage. Tract No. 2, which is the only tract involved in the present controversy, lies in the 9th Civil District of Lincoln County, about four miles from Tract No. 1, and contains 157.92 acres. The cross-bill alleges that Mary Lou Bryant, before her death, was suffering from cancer, and commencing in May 1947, until her death in September of that year, spent irregular periods in the hospital on account of her disease; that at one time when she was in the hospital, some five months before her death, she conferred with her attorney with reference to making disposition of her real estate, the two tracts of land above described; that to her lawyer and others she expressed her desire and intention to give her real estate to her husband; that she instructed her husband to procure the proper descriptions of the two tracts of land, and turn them over to her lawyer so that he might draw the necessary papers to effectuate a gift of the real estate to the cross-Complainant; that the husband undertook to procure descriptions of the two tracts of land; and took them to the lawyer, who prepared a deed in which, by mistake, description of the second tract in the 9th Civil District, though furnished by cross-Complainant, was that of land not the property of Mary Lou Bryant, and in which she had and claimed no interest; that when the deed was presented to her, she did not

discover the mistake and executed the deed, thinking that she was conveying her two tracts of land to her husband; and that the mistake was not discovered until after the death of Mary Lou Bryant, when the mistake could not be corrected by her; that for many months after September 1947, the cross-Complainant had remained in possession of said tract of land, treating it as his own and making improvements thereon; and he therefore prayed that the Chancery Court correct the description, reform the deed and decree his ownership of that tract of land.

Depositions were taken by both parties after Complainants had answered the cross-bill, and on the hearing the Chancellor disallowed the relief prayed in the cross-bill because he found that the evidence adduced to support the reformation of the deed was incompetent as being based on privileged communications between Mary Lou Bryant and (1) her husband, and (2) her lawyer, and that reformation of a deed of gift could not be decreed at the instance of the donee over the opposition of the heirs of the donor. Accordingly, the Chancellor granted the relief sought by the original Complainants. On appeal by the cross-Complainant to the Court of Appeals, in an excellent and well-considered opinion by Judge Howell, that Court reversed the Chancellor and entered a decree granting the relief sought by the cross-Complainant. Because some of the points presented are of first impression in Tennessee, and because important recent authority has been found since delivery of the opinion by the Court of Appeals, we find it necessary to file this opinion.

The Complainants have filed petition for certiorari, and after a careful study of the record, we find the controlling questions are whether the cross-Complainant, Jack Bryant, was entitled to reformation, which questions

are determined by determining (1) whether there was sufficient evidence to warrant the reformation without admitting privileged communications, and (2) whether the donee of a deed of gift can have reformation of the deed over the opposition of the heirs of the donor.

In considering the first question, some analysis of the evidence is necessary. The case of the cross-Complainant is made by his own deposition, the deposition of his lawyer and his wife's lawyer, Grady Wade, Esq., and the deposition of cross-Complainant's niece, Rachel Bryant, who lived in the home of cross-Complainant and his wife for some six months prior to her death, and who was present in the hospital, at her bedside, when the deed of gift was executed by her.

The testimony of this niece is not attacked, and so far as it goes, fully supports the case of the cross-Complainant for reformation. The fact that this testimony is at some points, vague and unsatisfactory, has this merit, that it shows that the testimony of the niece was honest and spontaneous, and that she had not been schooled for the occasion.

We next consider the competency of the testimony of cross-Complainant, Jack Bryant, in relation to the prohibition of Code Section 9777, that a husband may not testify as to any matter that occurred between him and his wife by virtue of or in consequence of the marital relation, and the competency of the lawyer's testimony in relation to Code Section 9978, that "No attorney . . . shall be permitted, in giving testimony *against a client*, . . . to disclose any communication made to him as such by such person, during the pendency of the suit, before or afterwards, *to his injury*." (Our emphasis.)

■ Although the privilege accorded certain communications between husband and wife, and attorney and client, has been long and frequently upheld by the Courts of this State, it has also been frequently recognized that there are many exceptions to this privilege. Conversations and communications between husband and wife, and attorney and client, which have taken place in the presence of third persons, are not privileged. *Allison* v. *Barrow,* 43 Tenn. 414; *Insurance Co.* v. *Shoemaker,* 95 Tenn. 72, 31 S. W. 270; *Sims* v. *Bank of Commerce & Trust Co.,* 14 Tenn. App. 672, 681.

T. O. Hazlett, father of Mary Lou Bryant, lived with cross-Complainant and his wife during the last years of his life. Cross-Complainant testified, as did the niece, Rachel Bryant, that the father had agreed with Mary Lou Bryant that cross-Complainant should have the real estate which Mary Lou Bryant inherited from the father. Mary Lou Bryant told the niece about these conversations with her father. No privilege rendered the testimony of Rachel Bryant incompetent.

■ Evidence of events leading up to the final execution of the deed while Mary Lou Bryant was at the hospital after May 1947, falls into these divisions: Mary Lou Bryant directed her husband to secure descriptions of her real estate and take them to her lawyer for the purpose of having the lawyer draw a deed of gift to the husband. The husband undertook to follow out the instructions, but by mistake gave the lawyer the wrong description of Tract No. 2, in the 9th Civil District. When the lawyer had drawn the deed containing the erroneous description, he and the husband went to the hospital to the room of Mary Lou Bryant, where she and the niece, Rachel Bryant, were waiting. The lawyer handed Mary Lou Bryant the deed and asked her if she wanted him to

read it to her. She replied that she did not, and as to this, the lawyer testified as follows:

"A. Well, she told me that it wasn't necessary; that she wouldn't know the calls and description and that she understood what it was, and I talked to her a few minutes, and I told her that that described the 155-acre tract that she owned in the 9th Civil District and the Home Tract on which they lived down in the 11th Civil District.

"Q. And you honestly believed that you were telling her right about it? A. Oh, yes, I did at the time, I thought I was telling her right, and she said that was the property that she owned, and if that was it, she was going to sign it.

"Q. And did she sign it? A. Oh, yes, she signed it.

"Q. Were you present when she signed it? A. Oh, yes.

"Q. Who else was present? A. Jack Bryant, her husband, was present and Rachel.

. . . . . .

"A. Oh, no. She thought, and I did too, she thought that that deed covered the land that she owned in the 9th Civil District that is the 155-acre tract, and she also thought it conveyed the property down on the Fishing Ford Road, in the 11th Civil District. I told her when she signed it that that was what she was signing."

"Q. You thought that too? A. Yes, sir.

"Q. And Jack did too? A. That is right."

This evidence was competent, not only because it took place in the presence of third parties, but in that it lacked the element of confidentiality.

 "The privilege assumes, of course, that the communications are made with the intention of confidentiality. The reason for prohibiting disclosure ceases when the client does not appear to have been desirous of

secrecy." Wigmore on Evidence, 3rd ed., Vol. VIII, sec. 2311, p. 600.

"But there are many transactions between attorney and client, that have no element of confidence in them, of which he is competent to testify." *Johnson* v. *Patterson*, 81 Tenn. 626, at page 649. Compare: *Wolfle* v. *United States,* 291 U. S. 7, 54 S. Ct. 279, 78 L. Ed. 617, 620; *Blau* v. *United States,* 340 U. S. 332, 71 S. Ct. 301, 95 L. Ed. 170.

After executing the deed, by which Mary Lou Bryant ratified the gift to her husband, she turned the deed back to the attorney for final delivery to the husband. Delivery and subsequent registration of the deed was a publication which removed any element of confidentiality, and so any aspect of privilege. The testimony of the attorney on these matters was competent in any event. *Lang* v. *Ingalls Zinc Co.,* Tenn. Ch. A., 49 S. W. 288. "When the deceased commissioned the witness (attorney) to deliver the deed to the grantee named therein she necessarily waived all objections that she might otherwise make to proof of that fact by the attorney." *Rosseau* v. *Bleau,* 131 N. Y. 177, 30 N. E. 52, 53; In re Coleman's Will, 111 N. Y. 220, 19 N. E. 71.

Accordingly, we think that not only were all elements of the evidence essential to support reformation, transactions which occurred in the presence of third parties and, therefore, not privileged, but also that communications by Mary Lou Bryant which were essential to support the reformation, were not given to the lawyer or the husband in confidence, but were such communications as were intended to be published. Cf. 58 Am. Jur., Communications to Be Made Public, sec. 491, p. 274. "All marital communications are, by implication, confidential, and a contrary intention must be made to ap-

pear by the circumstances of any given instance.''
*Fraser* v. *United States,* 6 Cir., 145 F. (2d) 139, 143;
*Wolfle* v. *United States,* supra.

We come next to the question whether the husband, as donee, may have reformation in a Court of Equity over the opposition of the heirs of the donor. There is no Tennessee authority on the point, and cases from other jurisdictions are in conflict. 45 Am. Jur., Reformation of Instruments, p. 599, sec. 30; 69 A. L. R. 426; 128 A. L. R. 1300; 10 Ann. Cas. 523.

▮ Voluntary action is an essential element of a gift and it has long been established that a Court of Equity will not decree reformation of a deed of gift over the opposition of the donor, since such opposition denies an essential element of the gift. Some cases hold that because the heirs stand in the donor's shoes, that reformation will not be decreed over the opposition of the heirs. There is no sound reason for this legal fiction since the heirs would have opposed the gift in the first place, as is evident in the present case. The sounder rule is that where, by clear and convincing evidence, the donee shows grounds for equitable relief, and a mistake in the gift, the Chancellor will carry out the proved intention of the donor over the opposition of the heirs.

▮ A case [*Dowding* v. *Dowding,* 152 Neb. 61, 40 N. W. (2d) 245] which has come to light since the delivery of the opinion by the Court of Appeals, and which considers many of the authorities on both sides of the question, is so nearly identical with the facts presented by the present record, and so clearly presents our view, that we copy from that opinion at some length:

''Action by Roy F. Dowding and Harold A. Dowding against William T. Dowding and others, sole heirs of

plaintiff's grantor, to reform description of realty in deed.

"The District Court, Otoe County, Dunbar, J., entered a decree for plaintiffs, and the defendants appealed.

"The Supreme Court, [of Nebraska] Chappell, J., held that the testimony of one of the defendant heirs at law of plaintiffs' grantor as to relevant transactions or conversations had with deceased during his lifetime, was not inadmissible under dead man's statute, that deed was delivered to plaintiffs, and that deed, although a voluntary conveyance, was subject to reformation, and affirmed the judgment."

. . . . . .

"We turn then to the question of whether or not the deed was subject to reformation. In that connection, the power of equity to reform instruments and correct mistakes therein in proper cases, is conceded. Without dispute, in the case at bar there was a mistake or error of description made by the scrivener, which did not conform to grantor's express direction and intention. In the light of undisputed evidence, we may assume, for the purpose of argument, that the deed involved was a voluntary conveyance, an executed gift *inter vivos*, but nevertheless conclude that it was subject to reformation. The rights of subsequent creditors and purchasers for value were not involved, and there was no claim of fraud or undue influence by the grantees.

"(7) Courts generally agree that a purely voluntary conveyance may not be reformed in equity at the suit of the grantee against the grantor during his lifetime without his consent. On the other hand, courts are not in agreement upon the question of whether or not such a conveyance is subject to reformation against the heirs at law of the grantor after his death.

"(8) Some courts take the view that as a matter of law the grantee's right to reformation is no greater against the heirs at law of the grantor than it would have been as against the grantor in his lifetime. Other courts, however, take the view that the principles precluding reformation of a voluntary conveyance at the suit of the grantee against the grantor during his lifetime do not ordinarily, as a matter of law, apply in favor of the grantor's heirs at law after his death, because when the reason for a rule ceases to exist, so should the rule itself. We adopt the latter view as not only entirely logical, but in the furtherance of justice, for which equity courts exist." *Dowding* v. *Dowding,* 152 Neb. 61, 40 N. W. (2d) 245, 250.

"It was contended by the defendant Warburton that, as this was a voluntary deed, this court cannot interfere to rectify it in favor of volunteers. The elementary principle of this court, that it will not interfere to enforce specific performance of an incomplete voluntary agreement, or to rectify an erroneous voluntary disposition of property in favor of a volunteer, is subject to this exception; that after the death of the donor it will interfere to rectify a disposition which is clearly proved to have, through mistake, failed to carry out the proved intention." *McMechan* v. *Warburton,* 1 Ir. R., 435, C. A., (1869).

In *Lister* v. *Hodgson,* L. R., 4 Eq., 30, 34, it was held that upon clear proof of the intention of the deceased donor, which, by a mistake, was not correctly carried out by the instrument of gift, a Court of Equity will interfere to correct the mistake, and thus act in favor of the intention. Further, that upon proof that the deceased donor did all he could to carry out the gift, a Court of

Equity will presume that the donor, if living, would assent to, and not dissent from the reformation.

"The reason for the rule preventing a court of equity from reforming voluntary conveyances as against the grantor does not extend to the heirs, and we decline to extend the rule in their favor. Each case must be governed by its own facts and circumstances. If there is equity in plaintiff's case as against the rights asserted by the defendants, a reformation should be decreed. If plaintiff's case is lacking in the elements that go to move the conscience of a court of equity, relief should be denied on that ground, but not for want of jurisdiction in the court because of the voluntary character of the conveyance.

"Here the conveyance was fully executed; the plaintiff retained possession of the property and made some improvements thereon; the defendants have in no way been injured; according to the record they have received everything that the father intended they should have; no rights of innocent third parties have intervened. Under the record here presented, the father would doubtless have desired to make the correction sought by this action, had he learned of the mistake in his lifetime. Under the facts of this case, a court of equity should in furtherance of justice grant relief by reformation." *Laundreville* v. *Mero,* 86 Mont. 43, 281 P. 749, 752, 69 A. L. R. 416.

Other cases in accord are: *O'Conner* v. *McCabe,* 42 S. D. 506, 176 N. W. 43; *Spencer* v. *Spencer,* 115 Miss. 71, 75 So. 770; *Lawrence* v. *Clark,* 115 S. C. 67, 104 S. E. 330; *Gibson* v. *Johnson,* 148 Ark. 569, 230 S. W. 578.

For the reasons stated and under the authorities cited, the writ of certiorari is denied, and the judgment of the Court of Appeals affirmed.

All concur.